BURR B. ANDREWS, Respondent, v. THE ÆTNA LIFE INSURANCE COMPANY, Appellant.

A party setting up an equitable estoppel is himself bound to the exercise of good faith and must show that he acted promptly, influenced by a belief in the truth of the matter represented and will be prejudiced if the representations are allowed to be disputed. The act must be the immediate or proximate result of the representation, as, unless induced by belief therein to alter his position, the opposite party cannot be concluded from averring a different state of affairs.

The first act, after hearing the words or witnessing the conduct upon which the alleged estoppel is founded, is the test of the party's belief, in the truth of the representation; and where the act evinces a disbelief, no estoppel can thereafter be claimed.

In an action brought to recover back premiums paid by plaintiff to defendant upon certain policies of insurance issued by the latter, the complaint alleged in substance that the policies were delivered in pursuance of a verbal agreement that they were to be non-forfeiting policies, and that each contained a provision that after three payments the policy would be good for its equitable value; that after payment of premiums for ten years, he concluded to avail himself of this clause, and on refusal

of defendant to allow and pay the equitable value of the policies, brought suit to recover the same; that defendant notified plaintiff and set up in its answer in said action that said clause was inserted in the policies without authority and without its consent, whereupon plaintiff discontinued the action. Defendant's answer in this action admitted its liability on the policies as written and averred its willingness to perform. It appeared upon the trial that plaintiff, soon after the commencement of the former suit, received a letter from defendant's secretary claiming that said clause was inserted without authority, but alleging that the company was willing to perform it, and requesting plaintiff to advise the company within a few days of his conclusion, so that if the suit was continued it might make arrangements for defense. Plaintiff did not comply with the request and the answer was served. This averred that the clause was unauthorized, but denied that defendant had refused to pay the equitable value and alleged that it had offered to perform. The cause was noticed by plaintiff for trial and he required as a condition of putting the case over the term that defendant should pay term costs, which it did, and thereafter the suit was discontinued. Evidence was also given to the effect that the clause was properly inserted in the policies, but the court denied defendant's request so to find upon the ground that "defendant was estopped from so proving." *Held,* error; that there was no proof that an estoppel at any time existed, but if so, the estoppel was waived; that plaintiff could not be permitted to go on disputing the truth of the assertions upon which the alleged estoppel is based, in no manner influenced thereby, until after payment of costs and then claim the estoppel.

(Argued April 29, 1881; decided May 31, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 6, 1879, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 18 Hun, 163.)

This action was brought to recover back moneys paid by plaintiff to defendant as premiums upon four policies of insurance issued by defendant upon the life of plaintiff.

The complaint alleged in substance that plaintiff made a verbal agreement with defendant's agent for non-forfeiting policies; that said agent under that agreement, delivered the policies in question, which purported to have been issued by defendant. Three of them contained this clause: "It is agreed that this policy shall be good after three payments for its equitable value." In the other, the clause was worded thus:

" It is agreed that this policy shall be good at any time after three payments, for its equitable value." That in pursuance of the agreement and supposing that the policies were the duly authorized contracts of the company, plaintiff accepted the same and paid half the premiums required in each for ten years, giving notes for the residue; that thereafter, having concluded not to make further payments, he demanded the equitable value of said policies, which defendant refused to pay or allow, further than to surrender the notes ; that plaintiff thereupon commenced an action for the recovery of such equitable value and thereafter was notified by defendant that said clauses in the policies were inserted without the authority or assent of the defendant, and this was also alleged in its answer in that action, whereupon the plaintiff discontinued the action. Defendant's answer admitted the receipt of the policies by plaintiff containing the clauses quoted, alleged that they were interlined and defendant has no recollection of authorizing it, but that defendant " at all times has held and holds itself ready to make good and fulfill all its obligations upon the assumption that said clause * * * constituted a part of the contract."

The further facts appear sufficiently in the opinion.

*Isaac S. Newton* for appellant.    The facts do not warrant a finding that there is an estoppel *in pais.* (*Bennett* v. *Judson,* 21 N. Y. 239 ; 51 id. 27 ; *Frost* v. *Insurance Co.,* 5 Denio, 154 ; Parsons' Mercantile Law, 127 ; 1 Cow. Treat. [2d ed.] 76 ; *Precious* v. *Abel,* 1 Esp. 350 ; *Bolton* v. *Hillersden,* 1 Ld. Raym. 224 ; 9 Hun, 646 ; *Carroll* v. *Ins. Co.,* 38 Barb. 402 ; Herman on Estoppel, 471, 511, 516, 522–523 ; 22 N.Y. 258 ; 34 id. 30 ; 4 McLean, 325 ; 5 Bigelow's Ins. R. 114, 267 ; *Currier* v. *Ind. Co.,* 15 Bigelow, 256 ; *S. C.,* 53 N. H. 538 ; *Young* v. *Ins. Co.,* 4 Bigelow, 1 ; *Fahrenkreg* v. *Ins. Co.,* id. 42 ; *Bk. of Beloit* v. *Beale,* 34 N. Y. 473 ; Herman on Estoppel, 470, 471 ; *Cobb* v. *Dows,* 10 N. Y. 345.)    Where the truth appears upon the face of an instrument, there can be no estoppel. (Herman's Law of Estoppel, 240 ; *Warren* v. *Leland,* 2 Barb. 614 ; *Sinclair* v. *Jackson,* 8 Cow. 586 ; Comyn's. Dig.,

Estoppel, E. 2; *Wheelock* v. *Henshaw*, 36 Mass. 345; *Carpenter* v. *Thompson*, 3 N. H. 204; Herman, 241; *Pargeter* v. *Harris*, 70 Barb. 238.) Estoppels are not favored, they are not to be used as a sword. (*Pierepont* v. *Barnard*, 5 Barb. 364; Rog. on Estoppel, 603; *Bush* v. *Critchfield*, 5 Ohio, 109; Wharton, § 1077; Herman, 564; *Hall* v. *Clagett*, 2 Md. Ch. 153; *Philpot* v. *Elliott*, 4 id. 273; Herman, 335, 338, 346.) The burden is on plaintiff to show that the first action was withdrawn because of the averments of the answer. (*Malloney* v. *Horan*, 49 N. Y. 111; *Lawrence* v. *Brown*, 5 id. 394; *Dezell* v. *Odell*, 3 Hill, 221; Bigelow on Estoppel, 480; *Jewett* v. *Miller*, 10 N. Y. 402; 4 Herman, 466–7; *Fitts* v. *Crook*, 5 Cush. 566.) The answer and statements in the letters were made in the utmost good faith. Such a statement is not conclusive as an estoppel. (*McKenzie* v. *Steele*, 18 O. S. 38; *Bitting's Appeal*, 17 Penn. St. 216; *Diller* v. *Drubacker*, 52 id. 498; *Eldred* v. *Hazlett's Adm'rs*, 33 id. 307; Wharton's Evidence, § 1145, note *a; Payne* v. *Burnham*, 62 N. Y. 73; *Burnham* v. *Brennen*, 10 J. & S. 49.) It must be willfully false to estop. (*Lefever* v. *Lefever*, 30 N. Y. 27; Herman, 565; *McKennehan* v. *Crawford*, 59 Penn. St. 390; *Spencer* v. *Carr*, 45 N. Y. 406; Wharton, § 1143, note 3; *Freeman* v. *Clarke*, 2 Exch. 663; *Grant* v. *Virginia Coal & Iron Co.*, 3 Otto, 335, 336; *McKenzie* v. *Steele*, 18 Ohio, 42; *Nye* v. *Denny*, id. 254.) There can be no estoppel by a simple withdrawal of the action. (*McMaster* v. *Ins. Co.*, 55 N. Y. 222; *Neill* v. *Ins. Co.*, 10 J. & S. 259; *Cummings* v. *Ins. Co.*, 67 N. Y. 260, 264; *Parmelee* v. *Ins Co.*, 54 id. 193; *La Farge* v. *Herter*, 4 Barb. 346, 353.) An averment in a pleading is never an estoppel. (*Reynolds* v. *Gardner*, 66 Barb. 313, 314; *Mason* v. *Alston*, 9 N. Y. 28; Wharton's Ev., §§ 838, 839, 1110, 1119, and notes.) There could be no estoppel, for the plaintiff's complaint in the first action did not state a cause of action. (*Brewster* v. *Silence*, 2 N. Y. 19, 41; *Ins. Co.* v. *Baker*, 7 Ins. L. J. 231; *Russell* v. *Gilmore*, 54 Ill. 148; *Tilton* v. *Nelson*, 27 Barb. 595, 600; *Worden* v. *Ins. Co.*, 39 Super. Ct. 317; *Little* v. *Ins Co.*, 5 Bigelow, 137; *Ohde* v. *Ins. Co.*, id. 145; *Hull* v. *Ins.*

*Co.,* id. 555; *S. C.,* 39 Wis. 397; *Washabaugh* v. *Ensiken,* 36 Penn. St. 513.) The policies had become void by reason of failure to pay premium notes. (*Thompson* v. *Ins. Co.,* 5 Bigelow, 8; *Rœhner* v. *Ins. Co.,* 4 Daly, 512; *Baker* v. *Ins. Co.,* 43 N. Y. 283; *Moses* v. *Ins. Co.,* 50 Ga. 196; *S. C.,* 5 Big. 61; *Robert* v. *Ins. Co.,* 2 Disney, 106; 44 Vt. 481; *S. C.,* 3 Bing. 777; *Andrews* v. *Ins. Co.,* 5 Big. 527; *Russum* v. *Ins. Co.,* id. 243; 3 Cent. L. J. 275, 354.) Estoppel never increases the plaintiff's demands. Under his first action, if he were entitled to cash he could only have $119.50 for each policy. (*Ins. Co.* v. *Baker,* 7 Ins. L. J. 271.)

*R. A. Stanton* for respondent. Defendant was estopped from defending this action by asserting that its repeated assertions and answers were false in fact. (*Finnegan* v. *Carraher,* 47 N. Y. 493; *Abeel* v. *Van Gelder,* 36 id. 514; *Trustees of the Presbyterian Congregation* v. *Williams,* 9 Wend. 147; *Hall* v. *White,* 3 C. & P. 136; *Frost* v. *The Saratoga Mut. Ins. Co.,* 5 Denio, 157; Coke's Lit. 352 A; *Pickard* v. *Sears-* 6 A. & E. 469; *Muller* v. *Pondir,* 55 N. Y. 334; *Continental Nat. Bk.* v. *Nat. Bk. of Com.,* 50 id. 575; *Bradner* v. *Howard,* 75 id. 417; *Glacken* v. *Zeller,* 52 Barb. 152; *Lambertson* v. *Van Buskirk,* 4 Hun, 628; *Ohio & M. R. R. Co.* v. *McCarthy,* 6 Otto, 258.) If a person acting under a mistake do acts which mislead the other party, he is equally estopped as though he were not acting under a mistake. (*Cont'l Nat. Bk.* v. *Nat. Bk. of Com.,* 50 N. Y. 575; *Blair* v. *Wait,* 69 id. 113; *Manufacturers & Traders' Bk.* v. *Hazard,* 30 id. 230; *Voorhees* v. *Olmstead,* 3 Hun, 745.) The non-forfeiture clause in the policies, being unauthorized by the company, and the plaintiff accepting them on the supposition that they were authorized, and were the contracts of the company, the minds of the parties never met, and no contract was in fact made. (1 Parsons on Contracts, book 2, chap. 2, § 1; *Barlow* v. *Scott,* 24 N. Y. 40.) The defendants being bound by the theory upon which they have induced the plaintiff to act, to wit: that the policies were never authorized by the company, they

are now bound to restore the consideration received by them. (*White* v. *Continental Nat. Bk.*, 64 N. Y. 319; *Day* v. *N. Y. C. R. R. Co.*, 51 id. 591; *Eben* v. *Lorillard*, 19 id. 302; *Utter* v. *Stewart*, 30 Barb. 20; *Delavigne* v. *United Ins. Co.*, 1 Johns. Cas. 310; *Murray* v. *United Ins. Co.*, 2 id. 171.) As a general rule the estoppel created by a false representation acted upon is commensurate with the thing represented, and operates to put the party entitled to the benefit of an estoppel in the same position as if the thing represented were true. (*Grissler et al.* v. *Powers*, 10 N. Y. Weekly Dig. 196.) The policies being void, the notes given for part of the premium were also void. (*Frost* v. *Saratoga Mut. Ins. Co.*, 5 Denio, 154.) The inference to be drawn from one's actions and conduct is much more satisfactory, and more frequently relied upon by the courts in determining the intent or belief of a party, where the question is material, than his evidence in the cause. (*Newman* v. *Cordell*, 43 Barb. 449.)

DANFORTH, J. By the pleadings in this case it was made material to ascertain whether the defendant by its policies "agreed that they should be good at any time after three payments for their equitable value." That these words were written therein is asserted by both parties, but the plaintiff alleges in his complaint that after the expiration of three years he brought an action upon that clause to recover the equitable value of the policies, and was then notified by the defendant that it was inserted without its consent; that by its answer in that action it repeated the assertion and he thereupon discontinued the suit. The defendant by answer in this action professes ignorance as to the origin of the clause, but admits its liability therefor, and avers its willingness "here, before and now, and at all times," to make good the promise contained in it; and while it does not deny the statements attributed to it, avers that in the suit referred to, it did, by the same answer, also offer to fulfill it. There was evidence upon the trial which would have warranted a finding that the clause was properly inserted as part of the contract of insurance, but the court

denied the defendant's request for a finding to that effect upon the ground " that the defendant was estopped from so proving." This was error.   To sustain the ruling the respondent refers : *first,* To a letter of the general agent of the company; *second,* To one from the defendant's secretary; and *third,* To the answer in the first action.   That action was commenced before December 26, 1876, and after that date the agent's letter was written, but it is enough to say there is nothing in the case to show that he had authority to bind the company by his declarations or admissions in respect to the matter, and we need not weigh his words.   The letter of the secretary of the company has a different relation and is entitled to consideration.   But we fail to find in it any language which requires the conclusion that the defendant then disavowed the obligation expressed by the clause in question.   Ignorance of its existence " until recently " is averred.   The assertion is also made, that it was written " without the knowledge or assent of the company," but it is not repudiated, and the writer says : " The point is one which we do not wish to sustain here; " adding, " we wish simply to convince you that the company is willing to grant all that you claim under that provision as if it had been written at this office as a part of the policy."   Then follows a lengthy discussion as to the meaning of the clause, that the value therein referred to is not to be paid " in cash," but by " insurance " and the amount of their " equitable value," but no doubt is expressed as to the validity of the policies, or any expectation that the defendant could escape responsibility for the insurance covered by them.   The argument of the writer is addressed to a construction of the policy.   Then we have the answer of the defendant in the suit first begun.   It is drawn to meet the complaint ; the complaint relies upon the clause in question. The expiration of three years, a demand of payment, refusal to pay the equitable value of the policies and asks judgment for $6,000.   The answer denies the promise set out in the complaint, arising on the clause referred to, " *and avers, upon information and belief,* that the agent who took the application of the plaintiff for insurance, without the knowledge or consent of

the defendant or its officers, and without any authority thereto, wrote into the said four policies the words, "and it is agreed that this policy shall be good, at any time after three payments, for its equitable value;" that the plaintiff well knew it was so altered, and avers that the terms so written were not and are not a part of the agreement of insurance made by it, but were unauthorized and constitute no part of the said several policies." Not only is the validity of the policy not denied, but the defense is limited to the clause in question. The defendant denies "that it has refused to pay the equitable value of the several policies, and avers that it has offered, *by way of seeking peace,* to pay such values in paid-up policies of insurance; alleges that such payment is all that would be required by the terms interlined as aforesaid into the said policies, if authorized, * * * and declares that it has in all things performed and is ready to perform all of the terms and conditions of its policies on its part to be performed, and has offered to so perform them." It also sets up as a counterclaim the notes given by the plaintiff on account of the premiums stipulated for, and asks an affirmative judgment for the amount of them. The substance of the answer, and the letters as construed by the plaintiff, is the same; a claim that the clause referred to was inserted by some person without the knowledge of or authority from the company. On the part of the defendant an argument of considerable ingenuity is presented to show that there are qualifying words in each recital, and in no one of them an absolute rejection of liability. Certainly there is nowhere an allegation that the policies are forgeries, or invalid by reason of the alteration. It is also argued that the statements in the answer are before judgment to be limited in their effect to the suit in which it is interposed; that as the purpose of the altercation expressed in the pleadings is to bring the parties to some point or matter affirmed by one and denied by the other, which, when decided, will terminate the controversy, the statements so made cannot be treated as intended or calculated to mislead the other party or affect his conduct, except in disposing of the issue formed. There is much force in

both of these propositions; but it is not necessary to answer to them, because we think the doctrine of estoppel can have no application under the circumstances of this case. The letters were received by the plaintiff soon after he commenced his action and before any answer was put in. By that of the secretary he is asked "to look into the matter very carefully, consulting authorities if you wish, and advise us within a very few days of your conclusion, because if you continue the suit we wish to make arrangements for defense." Nothing was done, and on the 12th of March, 1877, the answer was served. For the intervening time the plaintiff was neither misled nor otherwise affected to his injury by the assertion of the defendant. It may be safely concluded that he did not believe or rely at all upon the statements made to him. He certainly did not alter his position, but continued his suit and compelled the defendant into court. Then, with the answer before him, what did he do? Acquiesce in the statement or assertion of the defendant that the words of the policy were not its words, and that the policy had been altered? Not at all. He was not moved from the course he had marked out, but proceeded in the orderly conduct of the action, until he noticed the "issue," made by the various affirmations and denials of himself and the defendant for trial. That is, for the consideration of the jury, in order that they might determine whether the statement made by the defendant was true or false. In other words, he persisted in charging the defendant, in spite of its protestation to the contrary, as the author and maker of the contract on which in that action he relied. So far from being misled by the denial he accepted the issue tendered and came into court to meet the challenge. The issue took its place on the calendar for trial at the January Circuit in 1878. He was then ready for trial. The defendant was not. The plaintiff did not withdraw or permit his adversaries to do so without payment of money. And upon what consideration? Why that this issue, made up of the very matter which the plaintiff is now said to have believed, might, at a future and more convenient season, be tried, and the allegation of the defendant

shown to be false. The plaintiff then, by his conduct, in effect, said : I do not believe your assertion that the clause in question is spurious. I shall take judgment that it is genuine unless you prove to the contrary, and as you say you have not the means now here of doing it, if you will pay the costs of this attendance, another opportunity shall be given you. The costs were paid and received by the plaintiff. He now has them. They were paid to him because he did not credit or rely on the defendant's statement, and with those costs in his hand, he has been permitted to say, I did believe, and therefore you shall not prove the contrary. The argument for the respondent covers much ground and was well fortified by authorities, but not one of them approaches this case. There are none which go the length of enabling a party to set up an estoppel of this sort while he holds the fruits of his unbelief, exacted from his adversary as a condition of giving him a chance in court to maintain the truth of his assertion. A party setting up an equitable estoppel is himself bound to the exercise of good faith. Moreover he must act promptly. Here I think there is no proof that an estoppel at any time existed, but if mistaken in this, then it is clear that the estoppel has been waived and the matter set at large. That it may be, is as well settled as the doctrine itself. From the time his adversary first spoke, the plaintiff was bound to hold himself to one matter, if he intended to estop the other from saying to the contrary. It is common learning that an estoppel must be mutual or reciprocal. The decision before us, if it stands, will introduce an exception or indeed an entirely new law. The plaintiff has been permitted to go on disputing with the defendant, denying the truth of its assertions, in no manner influenced by them, until after he has taken the money of the defendant not due to him, except upon the theory that he did not believe the assertions, and having obtained that, now says I did believe, and the defendant is forbidden to gainsay it. His subsequent change of mind cannot aid the plaintiff. One who would profit by the doctrine of equitable estoppel must show speedy faith in his adversary and not a halting and changing belief. The door which

excludes the truth cannot be opened and shut at his pleasure. His first act after listening to the words on witnessing the conduct of his adversary, in regard to the matter involved, is the test of his belief in the existence of the thing represented and indicates that belief, for unless he is induced by those words or that conduct to alter his position, his adversary cannot be concluded from averring a different state of things. The effect must be instantaneous and manifest before a step is taken in opposition to such a representation. Here there has been, not one only, but many steps taken, each upon the assumption that the defendant was not believed, and each putting him to expense. The act now said to have been influenced by the defendant is, the withdrawal of the action. It occurred long after the defendant defined its position, and in the meantime the conduct of the plaintiff was not that of acquiescence. It has been said that the doctrine of equitable estoppel involves a question of legal ethics ( *Welland Canal Co.* v. *Hathaway,* 8 Wend. 483), and this is repeated in *Dezell* v. *Odell* (3 Hill, 225), and in *Frost* v. *Saratoga Mutual Ins. Co.* (5 Denio, 154), and is allowed to prevent fraud and injustice. Upon that foundation it would furnish a solid support for the defendant in answering the plaintiff's position, for it can be maintained only by excluding the truth after he had been paid for the opportunity of asserting it. It would, perhaps, be impossible to reconcile the great number of cases upon the doctrine of estoppel, but it is safe to say that they all involve this element, that the declaration on which it is asserted "must have in truth influenced the conduct of him who sets it up in a manner by which he will be prejudiced if the party making it is allowed to retract." The case is destitute of evidence to sustain a finding to that effect. It has been sometimes said that an estoppel *in pais* could be maintained only by such proof as could sustain an action for false representation (*Freeman* v. *Cooke,* 2 Exch. 654); without going to that length, it is obvious that the principle upon which such an action is maintainable applies here. That is, that the misrepresentation must apply to the date of the transaction in question. Here no representation or declaration was

made by the defendant at the time the plaintiff withdrew his action. It was made, as we have seen, several months before, and the only effect was to induce vigilance and care on the plaintiff's part in preparing for trial. Such a declaration or misrepresentation goes for nothing, for the act of the plaintiff was not the immediate or proximate result of it. It is plain that at that time the plaintiff chose to judge for himself in the matter, and did not trust to the defendant. This is not enough. (*Lyfney* v. *Selby*, 2 Lord Raymond, 1118.) Without adverting to other considerations, well argued for the appellant, we think the judgment against it cannot stand.

It should, therefore, be reversed, and a new trial granted, with costs.

All concur, except FOLGER, Ch. J., absent, and MILLER, J., taking no part.

Judgment reversed.