SOVEREIGN CAMP WOODMEN OF THE WORLD v. EMMA HICKS.

Decided December 14, 1904.

**1.—Benefit Certificate—Payment of Dues—Forfeiture.**

A provision in a benefit certificate that if the admission fees, dues or beneficiary fund assessments levied against the holder were not paid as required by the constitution and laws of the order, the certificate should become null and void, contemplated that in the event of a failure to pay such dues the certificate should become void without any action on the part of the order, unless payment was prevented by some act or omission on the part of the order or its officers.

**2.—Same—Same—Absence of Clerk.**

The holder of a benefit certificate was not suspended from the order for not paying his monthly dues, where he failed to do so because the clerk who received them was out of town or there was no clerk.

**3.—Benefit Society—Constitution—Bylaws.**

Where a certificate in a benefit society expressly stipulated that it should be forfeited if the members did not comply with the constitution and laws and such bylaws as were in force or should thereafter be enacted, such constitution and laws became a part of the contract and binding on the holder.

**4.—Same—Dissolution of Lodge—Reinstatement—Estoppel.**

Where a member of a benefit society was in good standing in the lodge to which he belonged at the time of its dissolution, but took no steps to reinstate in another lodge until his certificate was, by the constitution and laws of the society, forfeited, the action of the sovereign clerk of the order in advising him, after such forfeiture, what course to pursue in order to reinstate, did not invoke

the doctrine of estoppel against the society to deny his reinstatement where he did not act on the representations of the clerk.

**5.—Practice on Appeal—Costs—Statement of Facts.**

Where unnecessary matter has been copied into the statement of facts on appeal by the winning party, the costs of such statement will be taxed against him.

Appeal from the District Court of Guadalupe.    Tried below before Hon. M. Kennon.

*Onion & Henry,* for appellant.—1.   There not being sufficient evidence to sustain a verdict and judgment for plaintiff, defendant was entitled to a peremptory instruction.   2 Bacon, Benefit Societies, sec. 385b, p. 763; Knights of Honor v. Keener, 25 S. W. Rep., 1084; Peet v. Maccabees, 47 N. W. Rep., 119; Legion of Honor v. Landers, 72 S. W. Rep., 880.

2.   A suspended member of a fraternal insurance order must comply with the constitution and laws of the order in applying for reinstatement, and before his beneficiaries can recover they must show that deceased did comply with the laws, and that deceased would have been reinstated if he had lived.   2 Bacon on Benefit Societies, sec. 385b, p. 763; and authorities cited above.

*Dibrell & Mosheim* and *Adolph Seidemann.*—The evidence clearly showed that Fred Hicks was not at fault in failing to pay assessment No. 124, but that he was ready and willing and made every effort possible to pay said assessment, and that the clerk of the local camp at Marion had absconded and said Hicks had no person to whom to pay said assessment.   The constitution and by-laws make no provision for a case similar to the one under investigation.   The clerk of the local camp was the proper person and the only person to whom a member could pay his dues.   Manhattan Life Insurance Co. v. Fields, 26 S. W. Rep., 280; Life Insurance Co. v. LePert, 52 Texas, 504.

2.   The clerk of the local camp at Marion was the agent of the defendant, notwithstanding any provision in the by-laws of defendant to the contrary, for the undisputed facts show that it was his duty under the bylaws of the order to collect and forward to the sovereign clerk of defendant all dues and assessments.   This fact constituted him defendant's agent, and when the clerk of the local camp at Marion absconded, or put himself in a position that deceased's agent could not pay his dues at maturity, the negligence of the clerk of the local camp became the negligence of defendant.   Revised Statutes, 2943a; Manhattan Life Insurance Co. v. Fields, 26 S. W. Rep., 280; Boward v. Bankers' Union of the World, 68 S. W. Rep., 369; Andre v. Modern Woodmen of America, 76 S. W. Rep., 710.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellee to recover of appellant the sum of one thousand dollars with interest thereon at the rate of 6 percent from July 23, 1901, alleged to be due on a policy of insurance on the life of Fred Hicks, the husband of appellee,

who was killed in a railroad wreck on April 23, 1901. The cause was tried by jury and resulted in a verdict and judgment for appellee in the sum of one thousand dollars with 6 percent interest from July 23, 1901, less the sum of $2.60, the amount of unpaid premiums.

Appellant is a benefit society or order engaged in furnishing life insurance to its members. It has subordinate bodies known as "Camps" scattered about the country, with officers, and rules and bylaws for their government. Assessments are made by certain officers of appellant, whose headquarters are at Omaha, Nebraska. Under the rules and regulations of the order the assessments are paid to the clerk of the subordinate camps. Fred Hicks was a member of Mistletoe Camp, located at Marion, Texas. He did not reside at Marion, but for a number of years had paid his assessments through his brother, John Hicks. All assessments were paid by him up to January 1, 1901. Under the rules of the order a member has the whole month in which to pay the assessment for that month. There were legal assessments made for January, February and March, 1901, and deceased was duly notified. The certificate was payable on the death of Fred Hicks to Emma Hicks, his wife. He was killed in a railroad wreck on April 23, 1901.

It is provided in the constitution, and the provision is copied into and made a part of the certificate issued to Fred Hicks, that "if the admission fees, dues or beneficiary fund assessments levied against the person named in this certificate shall not be paid to the clerk of his camp as required by the constitution and laws of the order, this certificate shall be null and void and continue so until payment is made in accordance therewith." The language quoted is a part of the contract of insurance between the parties and the clear intention of it was to provide for a forfeiture of the policy, in case of a failure to pay the fees, dues and beneficiary fund assessments provided in the constitution and laws of the order, without any action upon the part of the order. It follows that a failure to pay either of the debts described to the clerk of the camp of which Fred Hicks was a member within the time prescribed by the constitution and laws of the order, worked a forfeiture, unless payment was prevented by some act or omission on the part of the order or its officers. Cohen v. Insurance Co., 67 Texas, 325; Laughlin v. Life Association, 8 Texas Civ. App., 448; Manhattan L. Ins. Co. v. LePert, 52 Texas, 504.

About the middle of January, 1901, the agent of Fred Hicks sought the clerk of the local camp at Marion in order to pay the assessment for that month, and ascertained that he was absent, not even his wife knowing his whereabouts. He was absent until about February 15, when the agent again attempted to pay the assessment and was informed by the clerk that he was no longer the clerk, and that the camp had disbanded. Appellant had prescribed the person to whom the payment of assessments should be made and under its law there was no one else to whom the assessments could be paid. The failure to have a clerk in Marion to whom the assessments could be paid could not be charged to deceased. All the duty devolved upon him was the payment to the clerk. No provision is made in the constitution and bylaws of appellant to meet such an emergency as the death or absence of the clerk of the local camp.

It follows that deceased was not suspended by a failure to pay the January assessment.

During the month of January twelve of the members of the local camp at Marion were transferred to New Berlin Camp, leaving only seven members belonging to Mistletoe Camp, Fred Hicks being one of them. Those seven did not pay the January assessment and on February 1 were recorded suspended by the sovereign clerk. The suspension necessarily dissolved the camp on February 1, 1901. It may be presumed that six of the members were in fact legally suspended as there is nothing to indicate that either of them endeavored to pay the assessment or would have paid it if a clerk had been present to receive it. Deceased having used all diligence required of him to pay his dues was a member in good standing at the time of the dissolution of the camp.

The dissolution of the camp, however, devolved other duties upon members in good standing if they desired to remain in such condition. The certificate was issued and accepted, as recited therein, subject to the constitution and laws of the fraternity, and it was expressly agreed that it should be forfeited if the member did not comply with the constitution and laws and such bylaws as were in force or should thereafter be enacted. They thereby became a part of the contract and as such bind the members of the order to whom the certificates are issued. In the case of West v. Grand Lodge, A. O. U. W., 14 Texas Civ. App., 479, 37 S. W., 966, this subject was fully discussed and the authorities collated. The status of Fred Hicks, and the duties devolving upon him after the dissolution of his local camp must be ascertained by recourse to the constitution and laws of the order.

In section 106 of the constitution of the order it is provided: "Whenever a suspended camp fails to reinstate, as heretofore provided, within thirty days from the date of its suspension, no benefits shall be paid upon the death of any member of such camp, which occurs after the expiration of said thirty days, unless the deceased member shall have paid all assessments and dues at his death, or holds an unexpired withdrawal, transfer or recognition card, issued by the camp before the day of its suspension, and official receipts showing him to be in good standing." Fred Hicks did not come within the purview of the provision, because he had not paid all assessments and dues and had no withdrawal, transfer or recognition card.

Section 107 of the constitution fixes the status of the member in good standing at the time of the suspension or dissolution of a local camp and points out the steps necessary to be taken to maintain his position and standing in the order. It is as follows: "A member in good standing in a camp at the time of its suspension or dissolution, may, within sixty days from the date of its suspension or dissolution by the sovereign camp, on the payment of all arrearages and fifty cents to the sovereign clerk receive from him a card on which he may be admitted to membership in any other camp, if presented within thirty days from its date, accompanied by the prescribed camp fee, under the restrictions required for the reinstatement of suspended members; provided that any member of a suspended or dissolved camp who shall be refused membership in another camp, after having complied with the foregoing

requirements, may, upon dispensation from the sovereign commander, be a member at large."

There is no proof that deceased, Fred Hicks, made any effort whatever to comply with the requirements of the foregoing section. His agent was in Marion and knew that the local camp was dissolved and on February 28, Fred Hicks himself was informed that the sovereign clerk had been compelled to record every member of the local camp suspended for nonpayment of an assessment thereby dissolving the camp. In reply to that communication from the sovereign clerk, Hicks wrote inquiring what he should do to reinstate himself and that official wrote him instructions and forwarded to him an application to be sent to the clerk of his camp. Hicks took no action whatever in regard to the matter although he lived over a month thereafter. Deceased, Fred Hicks, had, during January, done all that was required of him and his suspension on February 1, was not justified, still there were two other assessments levied by the proper authorities at the same time that the January assessments were levied, namely for February and March, 1901. No effort was made by Fred Hicks to pay either of them. It is not pretended that either of them was illegal or that the absence of the clerk prevented their payment. Payment of the January assessment would not excuse nonpayment of subsequent assessments and it can not be reasonably contended that a mere offer to pay the January assessment would absolve from failure to pay the February and March assessments. Deceased was charged with a knowledge of the constitution and laws of the order, and if he failed to obey them the beneficiary can reap none of the benefits of the certificate arising from his death. Splawn v. Chew, 60 Texas, 532. While this proposition of law is admitted by appellee, the contention is that the provisions of the constitution were waived by the sovereign clerk by a letter written by him to Fred Hicks on March 15, 1901, in which a blank application for reinstatement was sent and he was informed that if he would fill out the application and forward it to the clerk of the camp together with all the assessments that were unpaid he could be reinstated.

If it be admitted that the sovereign clerk could waive the requirements of the constitution of the order and that a compliance with his directions would have reinstated deceased, there is no evidence showing that he complied with the directions of the sovereign clerk. The only proof introduced on the subject is, that on April 15, 1901, the clerk of New Berlin camp wrote Fred Hicks as follows: "Yours at hand and will state that the Marion camp transferred to our camp No. 342, New Berlin, and all communications that are directed to Marion camp are forwarded to me at N. B. C. No. 342, and so was yours too. In reply I will say the following, as I will enclose a receipt to show you how you stand from what I have to go by, but I think it correct. Do you want to transfer to our camp? You can do so for you will have to be transferred from Head Camp (Omaha) for Marion has no organization and that is the only way it can be done or join as a new member and you have to pay the advance of your age."

From that letter the inference must be drawn that deceased had in compliance with the instructions of the sovereign clerk filled out the

blank application and had forwarded the same together with all the assessments to the clerk of the camp at Marion, if the waiver on the part of the sovereign clerk is to be held to have absolved deceased from a compliance with the demands of the constitution of the order. No such inference can be legitimately drawn from the letter. All that it tends to show is that Hicks had written to the Marion camp, that the letter had been forwarded to New Berlin camp, and that in his letter he had inquired as to the amount of his assessments. There is not a word to indicate that the application was in the letter or to show that deceased had written as to what his course of action would be. The New Berlin clerk seemed to desire information as to what deceased intended to do, and in the event he wanted to transfer the course to pursue was indicated. He received the letter the day before his death but still did not send the application or the money for his assessments, although he remained at least thirteen hours in San Antonio where he resided. If deceased did not act on the representations made by the sovereign clerk the doctrine of estoppel can not be invoked against appellant. Andrews v. Insurance Co., 85 N. Y., 334.

It is the general rule that the full costs of appeal should be assessed against the losing party, but where the costs have been unnecessarily increased by the winning party, whether by design or through carelessness, the increased costs will be assessed against the party responsible for them. In this case only a few sections of the constitution are at all pertinent to the issues, and yet the whole of the constitution and bylaws of the order, covering over eighty typewritten pages have been copied into the record. Not only has this been done, but portions of the constitution and several letters have been copied more than once in the record. The appellee in this case should not be compelled to pay for such a statement of facts.

The judgment in this case being dependent on a construction of the constitution of the order and the facts appearing to have been exhausted, another trial could not change the status of the case. It is therefore the order of the court that the judgment of the district court be reversed and judgment here rendered that appellee take nothing by her suit and appellant recover of appellee all costs of this and the district courts, except the cost of the statement of facts.

*Reversed and rendered.*

### ON MOTION TO RETAX COSTS.

The appeal in this case was perfected by the filing of the bond on June 15, 1904, and appellant had ninety days from that date in which to file its transcript in the Court of Civil Appeals. The transcript was delivered to appellant's attorneys on August 12, 1904, at least 32 days before the time limit for its filing had expired. Appellant is charged with knowledge of the condition of the transcript, but made no effort to correct the statement of facts. If it were permissible to allow a copy of documentary evidence to be attached to a transcript, and not copied in it, by an agreement of counsel, appellant knew that the constitution and bylaws had not been so attached and it should have had the agree-

ment enforced if it so desired. Appellant and not appellee is chargeable with the state in which the transcript reaches this court.

The motion to retax the costs is overruled.

                                                    *Overruled.*

Filed January 18, 1905.