## CALHOUN v. THE MACCABEES.
### (No. 7948.)

(Court of Civil Appeals of Texas. Galveston. Oct. 14, 1920. Rehearing Denied Nov. 4, 1920.)

**1. Insurance ⬳756(1)—Right to benefits held lost on member's default.**

The right to benefits is immediately lost on default of a member, where the laws of a fraternal benefit society provide that no affirmative action of the lodge is necessary to effect suspension for nonpayment of dues.

**2. Insurance ⬳755(2)—Head organization not ·estopped by local officer's acceptance of assessments from claiming suspension.**

The grand body of a fraternal benefit society is not estopped to claim a suspension and consequent forfeiture, where the member fails to pay assessments within the time provided by the laws of the order, notwithstanding the fact that a belated payment thereof may have been made to and accepted by the local officers or tent, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4847.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Katy Calhoun against The Maccabees. Judgment for defendant, and plaintiff appeals. Affirmed.

Woods, Barkley & King, of Houston, for appellant.

Hunt & Teagle, of Houston, for appellee.

GRAVES, J. In this proceeding, Katy Calhoun, as the designated beneficiary of her deceased brother, William H. Boyle, sought recovery from the Maccabees upon a life benefit certificate for $1,000 issued by that order to him during his lifetime. The court trying the cause without a jury denied her claim upon a finding that her brother had not complied with the laws of the society in the matter of paying the dues and assessments against him, and had been duly and legally suspended from membership therein for such nonpayment from about March 5, 1918, until his death some time in June of the same year.

There is no statement of facts; but the trial court filed its conclusions of fact and law, and the appellant contends that it appears therefrom that no suspension had in reality taken place, and that the society had waived the provisions of its by-laws and constitution requiring payment of all dues and assessments within the month during which they became due.

This position is grounded upon the assertion that the findings not only show full payments to have been made as they accrued within and for the months of January to June, 1918, inclusive, but also such repeated acceptances prior to those months of dues and assessments during succeeding months after they had become due as to constitute the waiver claimed.

After careful examination of it, however, we are unable to agree that such is the state of the record; on the contrary, nothing is disclosed therein that in any way countervails these findings of the court:

"I find that the monthly dues and assessments due by said William H. Boyle each month were as follows: One dollar and twenty cents per month life benefit, payable to the Supreme Tent of the Maccabees; ten cents per month per capita tax, payable to said Supreme Tent; thirty-five cents per month local dues payable to Houston Tent No. 28. I also find that the Supreme Tent of the Maccabees some time during the year 1917 levied a per capita tax of one dollar per annum on each and every member of said order engaging in the military service of the United States.

"I find that said Boyle and no one for him ever paid either of said one dollar assessments, although the same was levied for the years 1917 and 1918; that all the dues and the monthly rate as above mentioned were due and payable within the month for which they are levied. I find that for the month of January, 1918, said Boyle failed to pay either the life benefit rate, per capita tax, or dues to his local tent; that the record keeper sent out notices to the last known address of said Boyle calling his attention to the nonpayment of said dues and that not receiving a response from Boyle or any one else, the said record keeper out of his own funds, advanced the amount due by said Boyle to the Maccabees and placed him in good standing for said month, excepting the two dollars war tax above mentioned.

"I find that the record keeper was personally acquainted with Boyle, and had advanced the usual dues and assessments out of his own funds several times prior to January, 1918, but that the said action was personal to him and not under any authority or arrangement with either the local tent or the Supreme Tent of the Maccabees. I find that the death rate and dues for the month of February were not paid during said month, and that the record keeper thereupon some time between the 1st and 5th day of March, 1918, dropped from the roll and suspended the said William H. Boyle and promptly reported him suspended to the Supreme Tent in accordance with the rules and regulations of said Supreme Tent. I find that said record keeper also reported to the local tent the nonpayment of the dues due by said Boyle to the local tent, which report was made at the first regular meeting held after the first day of March, and that such meetings were held by the local tent on Wednesday of each week, and that said local tent adopted such report and declared said Boyle suspended from membership therein.

"I find that when a member fails to pay his life benefit monthly rate within the month for which it is levied, that he shall stand suspended without notice and that no action of his local

lodge or tent is necessary, but that in order to suspend him for dues owing to the local tent, his delinquency must be reported by the record keeper and the local tent must declare him suspended, but that this action does not apply or have any effect on the amounts due the Supreme Tent as aforesaid.

"I find that Katy Calhoun is the surviving sister of William H. Boyle. I find that Sol Z. Gordon, the record keeper of Camp No. 28, had made arrangements for the convenience of the local members to pay their dues, both local and to the Supreme Tent, at the jewelry store of Otto & Bammel in the city of Houston, Tex., and that said record keeper recognized the payments made to said Otto & Bammel as though the same had been made directly to him. I find that Katy Calhoun or her husband paid at Otto & Bammel's store February 5, 1918, $1.65; March 5, 1918, $1.65; April 10, 1918, $1.65; May 21, 1918, $1.65; and June 15, 1918, $1.65. That all of said payments were made after the said Boyle had been declared suspended and had been dropped from the Supreme Tent report, as before stated. That said sums of money were not accepted by the said Gordon, as record keeper, nor by the local tent No. 28, nor by the Supreme Tent of the Maccabees, but the same were held by said Gordon subject to the disposal of said Katy Calhoun and her husband, excepting the sum of $1.65, which sum said Gordon applied to the indebtedness due him personally for the sum paid out on behalf of said Boyle for the month of January, 1918. I find that if the sums paid by Boyle, and by those for him, had been applied to the payment of his dues, up to and including the 15th day of June, 1918, that he was still indebted to the Maccabees in the following sums: $2 for two annual assessments for war tax, $1.20 life benefit monthly rate, $.10 per capita tax, $.35 to his local tent—and that this sum was due at the time of his suspension, March 1, 1918."

Legal conclusions that the suspension was valid, entailed a forfeiture of all rights by whomsoever asserted under the certificate, and that the local tent officers were not only without authority to waive any provision of the laws or constitution of the order but had in this instance done nothing to estop the Supreme Tent, followed.

[1] There is likewise no fault found here. It has been well settled that the right to benefits is immediately lost on default of a member where the laws of a fraternal benefit society provide that no affirmative action of the lodge is necessary to effect suspension for nonpayment of dues. Sovereign Camp W. W. v. Hicks, 37 Tex. Civ. App. 424, 84 S. W. 425; Supreme Lodge K. of H. v. Keener, 6 Tex. Civ. App. 267, 25 S. W. 1084.

[2] Neither is the grand body estopped to claim a suspension and consequent forfeiture where the member fails to pay the assessments within the time provided by the laws of the order, notwithstanding the fact that a belated payment thereof may have been made to and accepted by the local officers or tent. United Moderns v. Pike, 76 S. W. 774; Brotherhood of Trainmen v. Dee, 101 Tex. 597, 111 S. W. 396; McWilliams v. Modern W. of A., 142 S. W. 641; Vernon's Sayles' Statutes, art. 4847.

So that, even if it had been shown here, which was not the case, that the local record keeper, Gordon, had accepted the payments made after January, 1918, as a compliance with Boyle's obligations for the months they covered, that action would still have had no binding effect upon the supreme authority, because he had stood suspended and had been dropped from its rolls of membership since early in March of that same year; moreover, there was no attempt even to prove that either of the two $1 annual assessments had ever been paid at any time.

From these conclusions it follows that the judgment must be affirmed; that order will be entered.

Affirmed.