DUVAL WEST, ADMINISTRATOR, ET AL. v. GRAND LODGE ANCIENT
ORDER OF UNITED WORKMEN OF TEXAS ET AL.

Delivered October 7, 1896.

**1. Mutual Benefit Certificate Subject to By-Laws of Order—Designation
of Beneficiary.**

C., a member of a benevolent order, and who, as such, had agreed to be bound by
its rules and by-laws, received from it a benefit life insurance certificate, which,
under its rules, was to be payable at his death to some one therein designated as the
beneficiary, who should be a relative or dependent on him; the rules also providing
that a member should have no vested right in such certificate, and that it should
constitute no part of his estate at his death, and that upon his failure to designate a
beneficiary of the prescribed classes, it should revert to the order. The certificate,
when issued to C., was made payable to his order, but under a by-law afterwards
adopted he was notified to send in the certificate and obtain a new one with the bene-
ficiary designated. This he failed to do, but gave a third person a written order
upon the association, making the amount of the certificate payable to such person.
Held, that upon such failure of C. to designate a beneficiary, the certificate was no
longer payable to his order, and lapsed.

**2. Same—"Dependent"—Concubine.**

One who, as housekeeper, lives in adultery with a member of the order, under a
contract to be his paramour, made after she was of full age, is not a "dependent"
to whom he can make payable the benefit life insurance certificate issued by the
order.

**3. Contract Against Public Policy and Morals Void.**

A woman's contract to live in adultery with a man, in consideration that his life
insurance certificate shall be payable to her at his death, is against public policy
and will not be enforced.

ON REHEARING.

**4. Pleading—Variance—Contract Consideration, or Gift.**

Where plaintiff's pleading alleged her claim to a benefit life insurance certificate
as arising by virtue of a contract of its transfer to herself, and the contract is held
invalid because the consideration on her part was immoral, she cannot, on appeal,
maintain her claim upon the ground that the transfer of the certificate to her was
a gift.

APPEAL from Bexar.    Tried below before Hon. R. B. GREEN.

*Hines & Bee,* for appellant.—1. The acceptance by the Ancient
Order of United Workmen, of the application of Benj. Cleghorn for a
certificate of insurance, payable to "his order," and the issuance by the
said Order of such certificate, so payable, was a waiver of its laws, rules
and regulations, if it had any contrary thereto.   Where the association
has the authority, and issues a certificate in conflict with a by-law, the
by-law is waived, and the certificate will control the rights of the par-
ties.   Davidson v. Old Benefit Association, 1 L. R. A., 482; Splan v.
Chew, 60 Texas, 536; Eastman v. Provident Association, 5 L. R. A.,
713; Knights of Honor v. Larmour, 81 Texas, 76.

2.   The acceptance of dues and assessments, or premiums, after the
issuance of such certificate, payable to "his order," contrary to its laws,
rules and regulations, by the A. O. U. W., was a waiver of such rules,

laws and regulations, and works an estoppel. Insurance Co. v. Hanna, 81 Texas, 492; McCorckle v. Texas Benevolent Assn., 71 Texas, 155; N. Y. Life Ins. Co. v. Eggleson, 96 U. S., 843; Bacon, Benefit Societies, sec. 187; Wist v. A. O. U. W., 29 Pac., 610; Milliard v. Legion of Honor, 22 Pac., 864; Globe Ins. Co. v. Wolff, 96 U. S., 388.

3. The certificate of insurance being at the time of Cleghorn's death in full force and effect, the amount thereof became a part of his estate to be administered upon and the judgment should have been for the plaintiff. Where a person takes a policy of insurance upon his own life and himself pays the premiums, such policy is valid and the insurance company cannot urge want of interest. Milner v. Bowman, 5 L. R. A., 99; Pacific Ins. Co. v. Williams, 79 Texas, 633; Goldbaum v. L. & H. Blum, 79 Texas, 640; Conn. Life Ins. Co. v. Schaeffer, 94 U. S., 457.

4. A valid policy or certificate of insurance which recites that it is to be paid to the "order" of assured, at his death becomes a part of his estate, and the amount thereof should be paid to his administrator. Burns v. A. O. U. W., 26 N. E. Rep., 443; Wasson v. Calhoun, 99 Mass., 342; Jewell v. A. O. U. W., 43 N. E. Rep., 88; Williams v. Carson, 2 Tenn. Ch., 269; White v. Smith, 2 Texas Civ. App., 401; Bacon, Benefit Societies, sec. 470.

5. There is one other view of this case which is entitled to consideration by this court and that is the inability of Cleghorn to comply with the law and notice of 1888. Cleghorn at the time he made application to the order for the policy or certificate of insurance had been for several years separated from his wife, and at the time he received the notice of 1888, she was dead, and there was no one who bore to him the relation required by its laws. To decide this case against his administrator, it must be held that an order of this character can at any time pass a law which a member cannot obey, and having received and used the amounts paid by him, continue to make and appropriate assessments thereafter, and then, as a crowning stroke of justice, take as their own the amount of the insurance for which they have been paid by decedent. Where there are no requirements as to beneficiaries when a policy is issued, and the law is afterward changed, it can not operate to avoid a contract previously made; it can have no retroactive effect. If assured were able to comply, it might; but where, as in this case, compliance is impossible, it cannot. Bacon, Benefit Societies, 187; Wist v. A. O. U. W., 29 Pac. Rep., 610; Hysinger v. Knights and Ladies of Honor, 42 Mo. App., 627; Becker v. Berlin Benefit Ass'n, 144 Pa. St., 232; 22 Atl. Rep., 699.

This certificate, being payable to the order of assured, is not expressed as payable to any third person, and should be paid to the administrator. Wasson v. Calhoun, 99 Mass., 342; Burns v. A. O. U. W., 26 N. E. Rep., 443; Jewell v. A. O. U. W., 43 N. E. Rep., 88; White v. Smith, 2 White & Wilson, 401; Bacon, Benefit Societies, 470.

*W. S. Rorson* and *J. T. Duncan*, for appellees.—1. The fund out

of which the Cleghorn certificate was to be paid was made by an assessment levied upon the members of the order, and voluntarily paid in by said members. It was and is a gift voluntarily raised by the members of the order, and the members of the order have the right to direct to what class of persons the same shall be bestowed.

He who has the right to give has the right to dispose of the gift. (Cujus est dare, ejus est disponere.)

The laws of the order explicitly declare that the beneficiary who takes this fund shall in every instance be a member of the member's family, or a blood relation, or a dependent. The plaintiff not being a person coming within the description of either one of these three classes, has no standing in court or right to recover.

2. By the laws of the order three classes of beneficiaries are established, to-wit: Members of the family, relations by blood and those dependent upon the member. Within these classes there is no limitation upon the right of selection. As long as the member keeps within these three classes the order has no concern and desires to exercise no control over the selection. But the laws of the order demand that the beneficiary selected shall be one of these three classes. If one not of the classes named be selected, the designation is void, and the law will treat it as if no selection had been made. It will be controlled by section 5, go first to the wife and children; second to blood relations; third to the dependents, and if there be none of these three to take the fund, then it shall remain with or revert to the order.

3. When the certificate sued on was issued it was made payable to Cleghorn's "order." This might have been done with perfect propriety, if he had, by his "order," made it payable to his wife, or some blood relative, or some dependent. To have done this would have been a substantial designation in compliance with the law as it then existed. But the making of the benefit certificate payable to Cleghorn's "order" was not a waiver of its by-laws, rules and regulations. Such a stipulation in the benefit was not inconsistent with the right of the order to refuse payment of the fund to the concubine of the member, or to object to any diversion of the fund to any object or person not intended to be benefited by the laws and purposes of the order. In his application for membership Cleghorn made this agreement: "I do hereby agree that compliance on my part with all the laws, regulations and requirements which are or may hereafter be enacted by said order, is the express condition upon which I am entitled to participate in the beneficiary funds and have and enjoy all the privileges of said order."

4. It is the duty of the courts to construe the rules and regulations of the order liberally in order to effect the benevolent purposes of the order, and in no case to construe them so as to defeat such purpose. Knights of Honor v. Keener, 25 S. W. Rep., 1087; Ballou v. Giles, Administrator, 7 N. W. Rep., 561; Sargent v. Supreme Lodge K. of H., 33 N. E. Rep., 650.

5. The acceptance of dues and assessments by the appellee after the

issuance of the certificate payable "to order," was not a waiver by appellee of its laws, rules and regulations.    Ballou v. Giles, 7 N. W. Rep., 561; Sargent v. Knights of Honor, 33 N. E. Rep., 650.

*John A. Green, Jr.*, for intervener, Hattie St. Clair.—1.  The court erred in not rendering judgment for the intervener, because, even though the defendant society may have issued an order that those certificates made out "payable to order" should be changed so that a new beneficiary, either related to or dependent upon or one of the family of deceased, would be named, yet the evidence shows that the deceased had no family or relative or heirs or other person than the intervener dependent upon him, and it was impossible for the deceased, Cleghorn, to further comply with the rules, regulations and by-laws of the defendant association.    Such order to name a beneficiary could not have the effect, under such circumstances, to invalidate the benefit certificate that was once legally issued, because the laws of the society were not intended to have a retroactive effect, and if so intended, could not take away a previously acquired contract right by rendering it impossible for the deceased to comply with the new orders, rules and regulations.    Wist v. A. O. U. W., 29 Pac. Rep., 610; 1 Bacon, Benefit Societies, sec. 187, and the authorities cited in note 1, p. 310.

2.    Dependency may be moral, legal or equitable and is a question of fact in each case; there is no stereotyped phrase by which the word "dependent" can be defined.    The law is not a science susceptible of the exactness of terminology used in mathematics.    McCarthy v. New England, etc., 26 N. E. Rep., 866; Ballou v. Giles, Adms., 7 N. W. Rep., 561; American Legion of Honor v. Perry, 140 Mass., 590; Alexander v. Parker, 33 N. E. Rep., 183; Story v. Williamsburg, etc., Ass'n, 95 N. Y., 474; Carmichael v. N. W. Mutual Benefit Ass'n, 51 Mich., 494; 1 Bacon, Benefit Societies, sec. 261.

3.    The court erred in not rendering judgment for intervener, because she had an insurable interest in the life of Cleghorn, deceased, and was designated as his beneficiary in the order given her, and as such she was entitled under the laws in force when the certificate was issued, to take the amount of said certificate.    B. effected insurance on the life of A., and stated in his application that he had kept her a certain length of time and promised to keep her as long as she lives.    It was held that as a matter of law the insurance could not be held to be speculative.    Fitzgerald v. Hartford Ins. Co., 13 Atl. Rep., 673; Fitzpatrick v. Same, 6 N. E. Rep., 180; 1 Bacon, Benefit Societies, 474, note 2.    A woman living with a man as his wife, though not legally married to him, has an insurable interest in his life.    Equitable Ass'n v. Patterson, 41 Ga., 338; 1 Bacon, Benefit Societies, 477, note 7.

4.    The transaction whereby Cleghorn executed and delivered to the intervener an order upon the defendant, making the policy payable to her was a completely executed transaction and was never repudiated by Cleghorn, nor did his administrator object on the ground of illegality.

The Grand Lodge, defendant, was not a party to said transaction or the making of said order, and was in no position whatever to plead any supposed illegality of the contract, agreement or transaction that had been wholly executed between Cleghorn and intervener, and never repudiated by either party. Only some one who stood in the shoes of one of the parties to the contract could object. Even if a person is a stakeholder of money illegally bet and won he must pay it over if the other party to the bet does not object. There is no law that will look with favor upon an objection to pay money on the part of a trustee, or bailee or agent, or stakeholder made only by the party holding the fund. The defendant received the premiums and does not even offer them back to anybody. It knew that the policy was payable "to order," and it was therefore payable to "anybody," not to any Pharisee or Saint, but to "anybody," even a publican or sinner. It does not lie in the mouth of the pious lodge to make the defense of illegality of agreement between Cleghorn and intervener. Greenhood on Public Policy, 98, rule CVI, illustrations I to X; Miller v. Railway, 55 Fed. Rep., 366; Hurd v. Doty, 56 N. W. Rep., 371; Savings Bank v. Burns, 38 Pac. Rep., 102; Woodworth v. Bennett, 3 Am. Rep., 706.

FLY, ASSOCIATE JUSTICE.—Duval West, administrator of the estate of Benjamin Cleghorn, deceased, sued appellee, the Grand Lodge of the Ancient Order of United Workmen, to recover the sum of two thousand dollars, alleged to be due on a certificate of life insurance issued to said Cleghorn.

Hattie St. Clair intervened in the suit, alleging that the certificate was payable to the order of Cleghorn on his application that it be so made, and further stated: "That seven years prior to the time when the said Cleghorn made his application for membership to said Milam Lodge No. 2, the wife of the said Cleghorn had abandoned him with the intention of never returning to him, and said wife died in the year 1885, leaving no issue. That in the year 1880 the said Benjamin Cleghorn, deceased, proposed to this intervener, who was then a young single woman of twenty-three years of age, that if she would keep house for him, attend to his physical and temporal wants and needs, see to the preparation of his food, and that his clothing was kept neat and in good repair, do all his washing, nurse him in sickness and occupy the position of wife to him during the remainder of his life, that he the said Cleghorn would care for, maintain and entirely support the said intervener during his life, and would insure his life for the sum of two thousand dollars, and make the said insurance payable to the said intervener at his death.

"That said intervener consented to such an arrangement and made a contract with the said deceased containing the said terms and bound herself to said deceased to carry out the same."

It is further stated that intervener carried out her part of the agreement and was dependent upon Cleghorn for her maintenance and

support; that at his death he left no wife or children or other relative, and had no one except intervener dependent upon him for support, and "that prior to his death the said Benjamin Cleghorn, deceased, in accordance with his contract so to do, made, executed and delivered to this intervener an order in writing upon the said Ancient Order of United Workmen, defendant, making the amount of said benefit certificate payable to the intervener."

Appellee answered that the deceased had bound himself to obey the by-laws and regulations of the institution; that an order had been passed that all certificates payable to order should be surrendered for cancellation, and notice was served on Cleghorn to surrender his certificate and receive one in which the beneficiary should be designated, and that he had failed and refused to obey said order, and thereby forfeited his right as a member, and if he ever had any right to assign the certificate, it had been lost. It was also answered that Hattie St. Clair had been the concubine of Cleghorn for many years, and that she was not a dependent as intended by the rules of the order. That the administrator could not recover because the life insurance, under the rules of the order, was no part of the estate of Cleghorn, but in the absence of any relative or dependent, the same reverted to the order.

The facts show that appellee is a voluntary benevolent association, and by complying with all the rules of the association, each member is entitled to a benefit certificate, and to name a beneficiary who, upon the death of the member, will receive the sum of two thousand dollars. Benjamin Cleghorn became a member of the association on May 7, 1883, and applied for and obtained a certificate of insurance for $2000, payable to his order. In his application he pledged himself to be bound by and comply with all the rules, regulations, and laws of the association as they then were and as they were changed or altered from time to time thereafter. The regulations of the association required that the $2000 should go to a designated member of his family, or blood relative or a dependent.

It is provided by the laws of the order as follows:

"3. In the portion of this fund, namely $2000, to which the beneficiaries of a deceased member are entitled, the members themselves have no individual property right; it does not constitute a part of their estate to be administered, nor have they any right in or control over the same except the power to designate the person or persons to whom, as beneficiaries, the same shall be paid at the death of the member. The beneficiaries thus designated have no vested right in said sum until the death of the member gives such right, and the designation may be changed by the member, in the method prescribed by the laws of the order, at any time before his death."

5. "Liability. No liability for the payment of any money shall arise by virtue of any beneficiary certificate, or certificate of membership, or otherwise, unless the member of the order named in such certificate shall, in every particular, while a member of the order, comply

with all the laws, rules and requirements thereof; and shall, at the time of his death, be a member of said order in good standing; and that the certificate, by virtue of which the demand is made, shall. not have been surrendered, or the rights thereunder surrendered by the member of said certificate, or his rights thereunder canceled at his request."

It is further provided:

"21, sec. 4.    Beneficiaries.    Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall, in every instance, be one or more members of his family, or some one related to him by blood, or who shall be dependent upon him.

"22, sec. 5.    Order of payment to beneficiaries.    If one or more of the beneficiaries shall die during the lifetime of the member, the surviving beneficiary or beneficiaries shall be entitled to the benefit equally, unless otherwise provided in the beneficiary certificate, and if all the beneficiaries shall die during the lifetime of the member, and he shall have no other direction, the benefit shall be paid to his widow, if living at the time of his death, and if he leaves no widow surviving him, then said benefit shall be paid, share and share alike, to his children, his grandchildren living at the time of his death to take the share to which their deceased parents would be entitled if living; if there be no children nor grandchildren of the deceased member living at the time of his death, then said benefit shall be paid to his mother, if living, and if she be dead at the time of his death, then to his father, if living, and should there be no one living at the time of the death of the member entitled to said benefit under the provisions hereof, then the same shall revert to the beneficiary fund of the supreme lodge.

"23, sec. 7.    Change of Beneficiaries.    Any member desiring to change his beneficiaries may do so in the following manner:    He shall fill out the blank form on the back of his beneficiary certificate, authorizing the change; he shall have his signature attested by the recorder of his lodge, and the seal of the lodge attached thereto, or attached by a civil officer under his official seal, when the member cannot sign in the presence of the recorder.    When this is done, he shall deliver his beneficiary certificate to the recorder of his lodge, together with a fee of fifty cents.    The recorder shall forward the same certificate and fee to the supreme recorder, who shall make a record of the change on the books of the supreme lodge, and shall issue a new certificate in lieu thereof, payable as directed on the back of the surrendered certificate. The new certificate shall bear the same number of the old one, which shall be safely filed and preserved.    The provisions hereof, in special cases, may be waived by the supreme lodge at its option.

"24, sec. 9.    Delivery of Beneficiary Certificate.    The beneficiary certificate issued to every member by the supreme lodge shall be delivered to him as soon as practicable after the Workman degree has been conferred; provided that in every case the date of countersigning the said certificate by the Master Workman shall be the date when the Workman degree was conferred."

"Art. 1, sec. 36.   3, In the portion of this fund, namely two thousand dollars to which the beneficiaries of a deceased member are entitled, the members themselves have no individual property right; it does not constitute a part of their estate to be administered, nor have they any right or control over the same, except the power to designate a person or persons to whom, as beneficiaries, the same shall be paid at the death of the member.   The beneficiaries thus designated have no vested right in the said sum, until the death of the member gives such right, and the designation may be changed by the member in the method prescribed by the Laws of the Order at any time before death."

"26, art. 5, sec. 1.   Qualifications for Admission.   No person shall be admitted to membership in any lodge under the jurisdiction of the grand lodge of Texas, unless duly qualified as herein prescribed, viz: A white male, not under 21 and not over 50 years of age, of good moral character, able and competent to earn a livelihood for himself and family, and a believer in a supreme being, the creator and preserver of the universe."

In 1888 notices were sent to all members who had certificates payable to order, by appellee, to send in their certificates in compliance with law, to be changed and that they should be made payable to some one of the class designated, named by the member holding the certificate. Cleghorn, though notified, did not comply with the order.

Cleghorn, at the time of the issuance of the certificate, had a lawful wife living who was afterwards divorced from him and died in 1885. At the time of the issuance of the certificate, Cleghorn was living in adultery with Hattie St. Clair, and was not living with his wife. Cleghorn did not designate any person to whom the insurance was to be paid, and left no will or testament. That the relation between Cleghorn and Hattie St. Clair was that of man and concubine, which continued for many years, and up to the time of his death. Cleghorn was a white man and Hattie St. Clair a negro woman. Cleghorn agreed with Hattie St. Clair that if she would live and cohabit with him, he would insure his life in her favor for $2000, and he gave her a written order for the money. These facts were not known to appellee.

The constitution and by-laws of the association prescribed the terms of the executory contract to which Cleghorn gave his assent when he became a member of the order and applied for insurance.   In the application for the insurance he covenanted to be bound by the by-laws, rules and regulations as they then existed, or as they might be altered or changed afterwards.   The certificate was granted on the same condition.   The constitution and by laws, with the changes made therein, being contracts by which Cleghorn was bound, if not against public policy will be enforced by the courts like other contracts.   Gooch v. Association, 109 Mass., 558; Grosvenor v. United Society, 118 Mass., 78; Chamberlain v. Lincoln, 129 Mass., 70; Karcher v. Supreme Lodge, 136 Mass., 368; Hellenberg v. I. O. B. B., 94 N. Y., 580; Sabin v. Phinney, 134 N. Y., 423.

The by-laws definitely fixed the different parties to whom the certificate was payable, and if none of the designated parties existed, it is provided that the amount of the insurance shall revert to the order. It is expressly provided that the member has no individual property in the $2000; that it does not constitute a part of his estate to be administered, and that he has no right in or control over the same except to designate the beneficiary. These requirements were a part of the contract. They are not contrary to law or public policy, and must be administered as the law of the case. The beneficiaries alone are entitled to receive the amount of the insurance. It is not a part of the estate of the deceased, and is not chargeable with his debts. Swift v. The Board (Cal.), 8 Pac. Rep., 95; Catholic Association v. Priest (Mich.), 9 N. W. Rep., 481; Ballou v. Gile (Wis.), 7 N. W. Rep., 561; Daniels v. Pratt (Mass.), 10 N. E. Rep., 434; Bishop v. Grand Lodge, 112 N. Y., 627; Bacon, Ben. Soc. & L. Ins., sec. 244. It does not matter that the certificate was made to the order of Cleghorn. When the by-law was passed providing that the insurance money was to be paid to beneficiaries of certain specified classes, to be designated by the member holding the certificate, it entered at once into and became a part of the contract of insurance. Hellenberg v. I. O. B. B., 94 N. Y., 580; Sanger v. Rothschild, 123 N. Y., 577. The contention, therefore, that the money would belong to the estate because payable to the order of Cleghorn, if a sound proposition in any case, would not have any application in this case, for the reason that, by the change in the by-laws, the certificate was no longer payable to his order. Receiving the premiums afterwards was not a waiver, certainly, of anything more than the return of the certificate, and [not of] the designation of a beneficiary. It did not set aside the regulation specifying the persons to whom the money was payable. Having no persons occupying the relation towards him that the laws required, upon his death the amount of the insurance reverted to the association. It follows that the administrator can not recover.

The intervener alleged in her petition, and it was admitted to be true, that she had entered into a contract with Cleghorn to live in a state of concubinage with him in consideration of his insuring his life for her benefit. In other words, for the sum of two thousand dollars, to be paid after the death of her paramour, she agreed to live and cohabit with Cleghorn for a number of years in violation of the statute. It does not matter that she did not know that the wife of Cleghorn was living when the illicit relation began; she does not claim any promise of marriage, or that she was seduced from the paths of virtue. The contract was begun and carried out as a business enterprise. She knew, or is charged with knowing, that a marriage contract could not be consummated between one of her race and one of the race to which Cleghorn belonged. The question presented is, can she recover the amount in the courts of Texas, agreed to be paid her, for a life of shame, led by her in defiance of public morals and in violation of the laws of the State? The courts never lend themselves to the enforcement of contracts which

are in violation of law and repugnant to public policy. There is no pretense in this case that the woman lived with the man believing that she was his wife, nor are there children towards whom moral or legal duties might arise. It is an admitted case of bargain and sale of the person of the female to the male for $2000 worth of life insurance. It does not come within the purview of the decisions in Supreme Lodge A. O. U. W. v. Hutchinson, 33 N. C., 816; Story v. Association, 95 N. Y., 474, or the cases cited by the intervener. In all of those cases the attitude of innocence occupied by the woman, or justice to the children, shaped and controlled the decisions of the courts. On the other hand, the only authorities that have come to our notice hold that a mistress, even in the absence of a contract like the one alleged, is not a dependent such as contemplated in the law of the order, and is not entitled to the insurance money from a mutual benefit association, at the death of her paramour. Keener v. Grand Lodge, 36 Mo. App., 543; Bacon, Ben. Soc. Life Ins., sec. 261. As said by Bacon in the section cited, "We must logically exclude also those whose dependence upon the member is for favor, which may or may not take a pecuniary form, and which may be cast off at pleasure."

No good purpose would be subserved by a discussion of the other points raised in the assignments.

The judgment is affirmed.                                    *Affirmed.*

ON MOTION FOR REHEARING.

FLY, Associate Justice.—We understood, as is insisted in the motion for rehearing, that the claim of Hattie St. Clair to the insurance money was placed on two separate grounds; first that the money was payable after Cleghorn's death, to his order, and that she had the order; and second, that she was a dependent within the purview of the bylaws. We hold that she cannot recover on either ground.

If it could be held, as contended by appellants, that Cleghorn had rights that could not be destroyed by legislation after the policy was issued, and that Cleghorn had the right to give an order to any one he saw proper, still we hold that such power would not authorize him to enter into such a contract (of which the order was the consideration) as was in open disregard of law and morals. Had Cleghorn made a gift to Hattie St. Clair of the insurance money, or had it been given in consideration of legitimate services, the position contended for would have more to recommend it to consideration. But the intervener presents no such case. It is alleged in the plea in intervention, "That in the year 1880, the said Benjamin Cleghorn, deceased, proposed to this intervener, who was then a young single woman of twenty-three years of age, that if she would keep house for him, attend to his physical and temporal wants and needs, see to the preparation of his food, and that his clothing was keep neat and in good repair, do all his washing, nurse him in sickness, and occupy the position of wife to him, during the re-

·mainder of his life, that he, the said Cleghorn, would care for, maintain and entirely support the said intervener during his life, and would insure his life for the sum of two thousand dollars, and make the said insurance payable to the said intervener at his death. That said intervener consented to such an arrangement, and made a contract with the said deceased containing the said terms, and bound herself to said deceased to carry out the same." This is followed by an allegation of performance of all the terms of the contract by the intervener and the execution of the order by Cleghorn. This at a time, too, when his legal wife was living. The prostitution of the intervener entered into and became a part of the contract which intervener performed. It was an illegal consideration, and, we think, vitiated the contract. Upon this contract intervener declared, and by it her cause must be adjudicated. It does away with any hypothetical case as to Cleghorn having the abstract right to give the insurance money to any one he saw proper, and that the nature of the consideration could not be inquired into. The consideration given by intervener is forced into consideration by her own allegations. We hold that she should not recover on a contract, which she alleges was based upon the prostitution of her body.

It seems to be a contention by the intervener, that the association was bound because it knew that she was the ·beneficiary, but the facts show that the association had no knowledge of the illegal relations maintained by them. Not knowing that the guilty relation existed, and being informed that the intervener had been designated, the association could not be held to have waived the by-laws as to the class of beneficiaries, or as to the property reverting to the association. It was not discovered that no legal designation had been made until after the death of the insured.

The case of Wist v. Grand Lodge A. O. U. W., 29 Pac. Rep., 610, decided by the Supreme Court of Oregon, is cited by the administrator. in support of his claim that no one having been designated as beneficiary, the insurance money became at the death of Cleghorn a part of his estate, subject to his debts. In that case the deceased had made a designation, which, at the time made, was a valid and legal one, and the court held, in a suit between the association and· the beneficiary, that the by-laws passed after issuance of the certificate would not be retroactive so far as to apply to a member who had no blood relative or any one dependent on him, and that the previously designated beneficiary could recover the fund. We are not prepared to accept the conclusions reached by that court, yet if they be correct, it does not follow that, if no beneficiary had been designated, the fund would become a portion of the estate of the deceased member. If it be held that the subsequent by-laws did not affect the terms of the original contract, still, there being no valid and legal designation of a beneficiary, the fund, as provided by the by-laws, reverted on his death to the association, and was not a part of the estate of deceased. "The member of a benefit as-

sociation having no interest nor property in the fund stipulated to be paid on his death to his appointee, but simply the power of appointment, failure to so appoint leaves the fund to be disposed of as provided for in the contract creating the power; and if no disposition is so provided for, then there is a total lapse of the power, and the fund will revert to the society." Bacon, Ben. & L. Ins., sec. 241.

The fund was payable to the order of Cleghorn, and, as said by the Supreme Court of New Hampshire, "The certificate was neither payable to the deceased, nor to his administrator, assigns, heirs, estate, or legal representatives. The defendant agreed to pay the benefit to no one, save such person or persons as Gigar should direct by entry upon the certificate or record book of the association. By the contract he had the mere power of appointing the person who should receive the benefit." Eastman v. Association, 62 N. H., 555. See also Worley v. N. W. Mas. Aid. Ass'n, 10 Fed. Rep., 227; McClure v. Johnson, 56 Ia., 620; Wason v. Colburn, 99 Mass., 342; Duval v. Goodson, 79 Ky., 224.

The cases cited by the administrator do not sustain the proposition that the benefit fund payable to the order of the insured in case he gives no order, will become a part of his estate. The cases discussed arose under different contracts from the one we have before us. We have considered this matter as though there was no by-law on the subject. But there was one which expressly provided that in case of the death of the insured, the fund should not become a part of the estate of the deceased. This by-law was never in any manner waived by the association.

We conclude that the motions for rehearings should be overruled, and it is accordingly so ordered.

*Overruled.*