# JANUARY, 1925.

MRS. J. G. WIRTZ v. SOVEREIGN CAMP, WOODMAN OF THE WORLD.

No. 4130.   Decided January 12, 1925.

(254 S. W., 637.)

**1.—Constitution—Judgment of Sister State—Faith and Credit.**

The requirement of the Federal Constitution that full faith and credit be given to judgment of a sister state, renders authoritative the determination by the court of last resort therein of the construction and effect of the Constitution and statutes of that state upon the powers of a domestic corporation thereof, when such question comes before the courts of another state. (Pp. 475, 476, 483).

**2.—Same—Benefit Insurance.**

The rulings of the Supreme Court of Nebraska upon the powers of a benefit insurance company incorporated in that state, under its Constitution and statutes and the Constitution and by-laws of the corporation, are held authoritative and are followed by the Texas court as determining:

(1) That the Constitution and by-laws of the order entered into and became a part of the contract with a member. (P. 474).

(2) That these made lawful the raising by the governing body of the corporation of the monthly assessment against members. (P. 475).

(3) That the company had authority, on failure of the member to pay the increased amount, to create a lien therefor on the amount of the benefit payable to the beneficiary on the member's death. (P. 481).

(4) That a provision in the certificate of membership that the holder should be exempted from payments after meeting all assessments for a period of 20 years, was *ultra vires* and void. (P. 476).

**3.—Estoppel.**

A member of a benefit insurance company, denying the right of the company to raise the monthly dues demanded of him, continued payment at the former and lower rate, notifying the company that this was done on the understanding that thereby the insurance would be kept in force. The company received such payments giving notice that they were insufficient and that a lien for the amount in default was declared against the amount to be payable to the beneficiary on the member's death. *Held* that the company was not estopped by receipt of the payments made from declaring and enforcing such lien. (Pp. 478, 479, 483).

Error to the Court of Civil Appeals for the First District in an appeal from Colorado County.

Mrs. Wirtz sued the Sovereign Camp, Woodman of the World, a benefit insurance company incorporated under the laws of the State of Nebraska, to recover the amount of a certificate of membership insurance issued to her deceased husband. Defendant claimed a reduction in the benefit specified in the membership certificate by reason of non-payment by deceased of the full amount of the monthly rates assessed against him. He denied their authority to raise the rates, and continued payment at the old rate claiming its sufficiency.

The company received the payments denying their sufficiency and assessing a lien for the difference, declared by them through powers claimed under their constitution and by-laws, against the amount payable to the beneficiary on death of insured.

Plaintiff recovered the full amount claimed. The company appealed and the judgment was reformed and reduced in accordance with its claims (254 S. W., 637). On this judgment Mrs. Wirtz obtained writ of error.

All three judges of the Supreme Court being disqualified, the Governor, on this fact being certified to him, commissioned Norman G. Kittrell, Sr. as Chief Justice and Charles L. Black and Walter C. Woodward as Associate Justices, to constitute the Supreme Court for the determination of the application for writ of error and the final disposition of the case.

*Wurzbach, Wirtz & Weinert.* for plaintiff in error.

Neither plaintiff in error nor her insured were parties to the Trapp Case, and it was agreed that they did not authorize same to be brought, and knew nothing of said case. Eastern Building & Loan Assn. v. Williamson, 189 U. S., 122, 23 Sup, Ct. (West Ed.) 527; Texas & St. L. R. R. Co. v. Robards, 60 Texas, 545; Phoenix Land Co. v. Exall, 159 S. W., 475-486; Trapp v. Sov. Camp, W. O. W., 168 N. W., 191; Royal Arcanum v. Green, 237 U. S., 531, 35 Sup. Ct., 724.

An incontestibility clause of an insurance policy, or of the by-laws made a part thereof, renders the policy a liquidated demand for the full amount upon the death of the insured. Haywood v. Grand Lodge of Texas K. P., 138 S. W., 1194: Goddard v. East Texas Fire Ins. Co., 67 Texas, 69; Hibernia Ins. Co. v. Bills, 87 Texas, 547; London & L. Fire Ins. Co. v. Davis, 84 S. W., 260; American Nat. Ins. Co. v. Briggs, 156 S. W., 909; Cyc., Vol. 25, p. 821.

Where a fraternal beneficiary insurance society accepts the payment of certain premiums from a member, even though such payments are not of themselves sufficient in amount to maintain the policy in force for the full amount, if accepted with the understanding on the part of the member that they are sufficient to keep the policy in force for the full amount, and with knowledge on the part of the society and its agents of such understanding of the member, the society thereby waives its right to contend that such payments were insufficient, and is estopped from thereafter claiming that the policy is not binding for the full amount. Sovereign Camp, W. O. W. v. Putnam, 206 S. W., 970; Equitable Life Assur. Society v. Ellis, 147 S. W., 1152; Sovereign Camp, W. O. W. v. Miller, 220

S. W., 635; Calhoun v. The Maccabees, 241 S. W., 101; McCorckle v. Texas Benevolent Ass'n, 8 S. W., 516; Illinois Bankers Life Ass'n v. Dodson, 189 S. W., 992; Supreme Lodge Knights of Pythias v. Withers, 20 U. S. Sup. Ct., 611, 177 U. S., 260.

*Wolters, Storey, Blanchard & Battaile,* for defendant in error.

The Charter of the Society, its Constitution and By-Laws, the application for membership and the Beneficiary Certificate constitute the contract between the member and the society. Under the contract between the Society and the member the latter was obligated to pay all dues and assessments that may be levied while he remained a member of the Society. Art. 4834, Revised Statutes of Texas; Haywood v. Grand Lodge, 138 S. W., 1194; Modern Woodmen of America v. Lynch, 141 S. W., 1055; United Moderns v. Colligan, 77 S. W., 1055; Sov. Camp. Woodmen of World v. Hicks, 84 S. W., 425; Sov. Camp. W. O. W. v. Nigh, 223 S. W., 291; Carter v. Sov. Camp. W. O. W., 220 S. W., 239.

The power of the Association to change or abrogate the By-Laws and the effect thereof upon the members and their crtificates is, under the Full Faith and Credit Clause of the Federal Constitution, to be determined by the laws and decisions of the State of Nebraska, the state of its origin, and such laws and decisions the courts of Texas are constitutionally obliged to apply. The failure of the trial court to give effect to the judgment of the Supreme Court of Nebraska in the case of Fowler v. Sovereign Camp, W. O. W. was a violation of the Full Faith and Credit Clause of the Federal Constitution.

The appellant having advised the member what the effect of continuing the payment of assessments at the old rate would be, namely, to fix a lien upon the certificate, the Society by accepting such payments, where under the by-laws the member had the privilege of so paying, is not estopped to assert such lien. Fowler v. Sov. Camp, W. O. W., 183 N. W., 550; Garretson v. Sov. Camp, W. O. W., 243 S. W., 257; Supreme Council v. Green, 237 U. S., 531; Thomas v. Knights of Maccabees, 149 Pac., 7; Wright v. Mutual Life Ins. Co., 193 U. S., 657; Reynolds v. Supreme Council, 78 N. E., 129; Supreme Lodge v. Smythe, 245 U. S., 594; Westerman v. Supreme Lodge, 94 S. W., 470; Miller v. National Council, 76 Pac., 830; Clarkson v. Supreme Lodge, 82 S. E., 1043; Sealy v. Sov. Camp, W. O. W., 107 S. E., 417; Trapp v. Sov. Camp. W. O. W., 168 N. W., 191; Haner v. Grand Lodge, 168 N. W., 189; Supreme Lodge v. Ray 166 S. W., 47; Bright v. Supreme Council, 209 S. W., 379; Bills v. Bills, 207 S. W., 614; Coleman v. Anderson, 98 Texas. 576.

The question turns upon the power of the corporation under its charter, and this power is to be measured in other states by the same measure and rule laid down by the decisions of the courts of the state where the corporation is chartered, if the courts of that state have ruled on said powers. That this rule is well settled is evidenced by the following text writers: Beale on Foreign Corporations, P. 4; Morawetz on Corporations, pp. 874-5; Thompson on Corporations, Sec. 6627; Fletcher's Cyc. on Corporations, Sec. 5720.

MR. CHIEF JUSTICE KITTRELL delivered the opinion of the Court.

STATEMENT OF THE CASE. The facts upon which the original action was based are so tersely and clearly stated by the Court of Civil Appeals (Vol. 254, S. W. R. 637) that we deem it unnecessary to re-state them.

The plaintiff in the Court below alleged every fact necessary to support her case, and the case was tried upon an agreed statement of facts which showed issuance of the certificate, payment of assessments, membership in good standing until the death of the insured, and the only question to be decided is whether the recovery should be for Two thousand, One hundred Dollars ($2,100.00), or for One thousand, Four hundred and Ninety-three Dollars and Ninety cents ($1,493.90).

We are of the opinion that the counsel for defendant in error correctly phrases the issues to be determined when they say there are but two:

First—Did the society have the right to increase the rate of assessment on the certificate in question? and

Second—If it had such right, does the certificate stand charged with the lien asserted by the society?

The trial Court held that it does not. That holding the Court of Civil Appeals did not agree with, and we are called upon to decide whether the latter Court reached a correct conclusion or not.

There are certain questions relating to the powers, rights and liabilities of fraternal associations concerning which the law appears to have been definitely settled:

FIRST. That the constitution and by-laws of the association become a part of the contract, and the insured is charged with notice thereof and is held to be bound and to abide by the same, as also by any prescribed rules and regulations which are not in conflict with the constitution of the United States, or the laws of the State, or the charter of the association, or are not against public policy.

This proposition is supported by the following authorities: West v. A. O. U. W., 37 S. W., 966: United Moderns v. Colligan, 77 S. W., 1032; Sovereign Camp, etc. v. Hicks, 84 S. W., 425; Modern

Woodmen, etc., v. Lynch, 141 S. W., 1058; Carter v. W. O. W., 220 S. W., 239; Stark ·v. W. O. W., 225 S. W., 1063; Miller v. National Council, etc., 76 Pac., 830.

The latter case holds also that the insured must examine the constitution and by-laws if such action be necessary in order for him to ascertain what the contract is, and holds also that he is bound by subsequently passed laws if they are reasonable.

Second. That fraternal associations have the power to change their constitutions and by-laws at will, so long as such changes do not violate the Federal Constitution or the laws of the State, and that they may also increase rates to such extent that will enable them to pay their losses.

This proposition is supported by the following authorities: Garretson v. W. O. W., 243 S. W., 257; Clarkson v. Supreme Lodge, 82 S. E., 1043; Wright v. Minnesota, etc., 193 U. S., 832; Supreme Lodge, etc., v. Mims, 241 U. S., 574; Supreme Lodge, etc., v. Smyth, 245 U. S., 702.

The decision in the latter case was based on and controlled by that of the preceding case,—the Mims,—in which it was held that a provision in the certificate that payments on a certain class of policies should remain fixed was not a contract but a mere recital and a matter of regulation.

Third. That whether rates shall or shall not be raised is a matter to be determined by the governing body of the association having ultimate authority in that regard, and if they are reasonable the Courts will not disturb them, and that to raise rates does not violate the contract.

This proposition is supported by the Mims case and by: Clarkson v. Supreme Lodge, 82 S. E., 1043; Sealy v. Sovereign Camp, etc., 107 S. E., 417; Supreme Lodge v. Ray, 156 S. W., 47. It is said in the Mims case (supra): ''The corporation is simply the medium for collection and distribution * * * * *. The essence of the arrangement was that the members took the risk of events and if the assessments levied were insufficient to pay a benefit of a certain amount, whether from diminution of members or any other cause, either they must pay more or the beneficiary take less.''　∘

Fourth. That the judgment of the Court of ultimate resort of the parent State of the association, construing its charter and determining its power with reference to raising rates, is binding upon the Courts of all other States under the ''full faith and credit'' clause of the constitution, whether the party resisting the raising of rates was a party to the cause which determined the question or not. This proposition is supported by the case of Royal Arcanum Supreme Council v. Green, 237 U. S., 531, 35 Sup. Ct., 724, 59 L. Ed., 1089, L. R. A., 1916A, 771.

In that case the trial Court in New York held that the judgment of the Court of another State was not controlling in that State, the same corporation being a party to the action in both States. The Appellate Division under the New York system of procedure reversed that holding. The Court of Appeals—the Court of last resort in New York—reversed the Appellate Division. The case was carried to the Supreme Court of the United States upon the ground that the Court of Appeals of New York erred in not holding that the "full faith and credit" clause of the constitution applied, and the Supreme Court of the United States held that the Court of Appeals of New York *had* erred, and that the record of the Massachussetts Court, where the same association and the same question were before it, was binding on the Courts of New York. In view of the fact that this is a decision of the Supreme Court of the United States, there is no necessity to cite any other authority on the point.

FIFTH. That in benevolent societies, such as the defendant in error, the beneficiary has no vested right in the certificate until the death of the member. He has a mere expectancy which may be divested by the member changing the beneficiary.

This proposition is supported by the following authorities: Masonic, etc., v. Bunch, 19 S. W., 25; Westerman v. Supreme Lodge K. P., 94 S. W., 478; Bills v. Bills, 207 S. W., 614; Coleman v. Anderson, 98 Tex., 576.

SIXTH. So far as fixing and maintaining rates is concerned, the policy of such a corporation is not a "contract" in the ordinary sense of that term, and assessments can be increased. This proposition is supported by the case of Supreme Lodge v. Mims, 241 U. S., 574; and Thomas v. Knights, etc., 149 Pac., 7.

SEVENTH. It may be stated, in view of the authorities, that the provision of the contract that the insured should be released from any obligation to pay any assessments after the lapse of twenty (20) years, was *ultra vires* the association. This proposition is supported by the case of Haner v. W. O. W., 168 N. W. (Neb.) 189, and Trapp v. W. O. W., 168 N. W., 191, both of which cases were decided by the Supreme Court of Nebraska, and under the holding of the Supreme Court of the United States in the Green case (supra), the decisions in those cases are binding upon the Courts of this State. This proposition is also supported by the case of Garretson v. W. O. W., 243 S. W., 257 (Missouri), a case very similiar to this. In the Westerman case, above cited, it is said that the law applying to paid up policies is not applicable to fraternal and benevolent associations. The holding in the Haner and Trapp and Garretson and Westerman cases, above cited, appears to us to be based on sound principle if, indeed, such holding was not demanded by the necessity of the situation.

No benevolent association is an insurance company in the ordinary acceptation of that term. The relation of certificate holders—as distinguished from "policy holders"—is essentially mutual and reciprocal. Each certificate holder is an insurer of the other, and of all others who are members, and if it were permitted to exempt a certain part of the membership from the payment of dues, after they have been members a certain length of time, or after they have reached a certain age, that relationship of mutuality and reciprocity, which is the essence of the association, would be destroyed, and the burden of paying assessments sufficient to meet losses would be shifted from the whole to a part of the membership, with the inevitable result that the whole theory of organization of such associations would be violated, and the whole fabric—none too strong at best—which is built upon it, would fall into insolvency and ruin.

In Wright. v. Minn., etc., (supra) the company changed from the assessment plan to the legal reserve, flat premium plan, and the contention was raised by plaintiff that there was a contract that the plan of insurance was never to be changed. Justice Day, speaking for the Supreme Court of the United States, says:

"Where the right of amendment is reserved in the statutes or articles of association, it is because the right to make changes which the business may require is recognized, and the exercise of the privilege may be vested in the controlling body of the corporation. In such case, where there is exercise of the power in good faith, which does not change the essential character of the business, but authorizes extension upon a modified plan, both reason and authority support the corporation in the exercise of that right * * * * * * The business is still that of mutual insurance, notwithstanding the changed method of operation. * * * * * * There was no contract that the plan of insurance never be changed. On the contrary, it is recognized that amendment might be necessary. There was no vested right to the continuance of a plan of insurance which experience might demonstrate might result disastrously to the Company and its members."

In the present case the readjustment of rates was made under Division "c," of Section 60, and it is held in the Garretson case that that was not such an increase of rate as to render the adjustment void.

Eighth. The Courts will take judicial knowledge of the fact that fraternal associations may reasonably increase their rates, because experience has demonstrated that such has been necessary for their continued existence. This proposition is supported by the case of Mims (supra), and the case of Clarkson (supra,) and Wright v. Minn. etc., (supra).

In the Clarkson case, 82 S. E., 1046, it is said in substance that assessment insurance has been the subject of much controversy. Experts have contended that it is based on unsound principles. The history of such organizations shows that increases of rates are necessary as the association grows older, and rates must be increased from time to time, because the theory on which they are established will not bear the test of time, as will that on which what are called "old line" companies are organized. Fraternal and benevolent associations which operate on an assessment basis must either increase rates or be unable to meet their obligations. (Wright v. Minn, etc., (supra). Certificate holders must take knowledge of that fact, (Clarkson case, (supra).

In this connection, it may serve a helpful purpose to quote the language of the Supreme Court of Nebraska in the Haner case: "Plaintiff, as a member of the association, was a party to the adoption of the by-laws. He does not stand in the same relation to the association as does the holder of a policy in a standard insurance company, but occupies the dual position of insurer and insured."

Referring to the question of the management of societies, it is said in the case of Wright v. Minn., etc.: "While the rights of members will be protected against arbitrary action, such organizations will ordinarily be left to their own methods of action and management. The changes under consideration are made in good faith and have been accepted by many of the old members, as well as those who have taken policies since its changes in plan have been made, and, in our view of the case, the changes in the method are not beyond the corporate powers of the company."

It is undeniably true that benevolent and fraternal organizations and life insurance companies are as subject to the operation of the law of estoppel and waiver as are individuals, and the law has in both particulars been repeatedly enforced against them in this State, but it is our opinion that neither estoppel nor waiver can be invoked against the defendant in error under the facts in this case. Waiver pre-supposes full knowledge of existing right, while estoppel arises where by fault of one, another has been induced to change his position for the worse.

There was no concealment upon the part of the defendant of any fact from the insured, nor any action upon its part which rendered the position of the defendant any worse, save and except in so far as it increased its rates. The beneficiary had no vested right under the certificate until the death of the insured, and the right to increase the rates is established beyond all question. It is not contended here that the rates were unreasonable, or at least there was no proof offered to that effect. It has been held that to give the defendant

the privilege to choose between options was not a violation of the contract. (Garrettson case, 243 S. W., 257). If he had declined to pay any premiums at all all benefits would have been forfeited. . The right to increase the rates existed, as must be conceded, and if the insured declined to pay the rates and elected to rest upon the knowledge that the defendant association would charge them against the policy, then we are of the opinion he was bound by such action. It was certainly more favorable to him than the result would have been had. he declined to pay in any form the increased rates, which the defendant had the right to fix, and thereby have forfeited the policy.

It does not appear to us that the Batte case, 79 S. W., 629, militates against what has been said above. That case did not directly involve the question of the right to increase rates; but the association had issued a policy upon which they had agreed to pay, upon the death of the insured, Five thousand Dollars ($5,000.00), but it subsequently changed the contract so as to make it liable for only Two thousand Dollars ($2,000.00), and the Court of Civil Appeals held,—and we think properly,—that that was a repudiation of the contract. The defendant in this case does not decline to pay the certificate, but simply reduces the amount to the extent of the difference between the assessment that was due after the rates were changed, and that which the insured had before paid.

While the decisions of the Courts of other States are not binding upon us, they are at least enlightening and persuasive, and we are impressed by the holding in the case of Garretson v. Sovereign Camp, 243 S. W. On page 260 the court deals with the question of waiver— the same question of waiver that is raised in this case—and uses this language:

"Plea of waiver is based upon the fact that after the 1919 laws of the defendant went into effect, January 1st, 1920, insured continued to pay his old rate and the defendant continued to receive the payments; there was no waiver in this. Defendant received the insurance payments but it also placed a lien against the certificate. Under Section 60 of the defendant's laws 1919, insured had the right to elect under division "a" or "b", as heretofore explained. If he failed to elect, then, without action on his part, he was placed under division "c." He took no affirmative action; hence, fell under division "c." There are none of the elements of waiver involved."

As regards the contention that the defendant in error cannot be heard to plead *ultra vires,* it appears to us that there is a clear distinction between the case of Eastern Building, etc., v. Williams (U. S. 47, Law Ed., 122), cited by plaintiff in error on that point and the case at bar.

In that case the defendant was a building association, and sold shares under a plain and positive promise in writing that when a certain number of payments of a fixed amount had been paid for seventy-eight (78) months, it would pay One hundred Dollars (100.00) for, or, on each share.

It was essentially an organization for profit upon investment made in its share. The element of benevolence in the form of provision against sickness, disability or death was no more a part of the contract than profit is a part of the certificate which is the basis of this action.

The trial Court in the case above cited held that there was nothing in the statutes of New York, or the articles of incorporation, or the by-laws of the company, which had the effect to alter the apparent meaning of a positive, absolute promise, or change it to a conditional one, and the Supreme Court of the United States approved that holding.

No argument is necessary to point out the difference between that case and this, nor to show that the rights, powers and obligations of benevolent societies, such as plaintiff in error, must be determined by rules of law which are peculiarly, indeed, it might be said, exclusively, applicable to them, because of the very purposes of their formation and their methods of operations.

The plaintiff in error and all other kindred associations which operate along the same or similar lines, and pursue the same or similar methods of administration, are organized solely for the purposes of benevolence, in a broad and comprehensive sense of that term.

The statutes pursuant to which they are formed, and their articles of incorporation, make it clear that in the administration of their affairs the idea of profit is to be eliminated from consideration, and it would seem that logically, if not indeed necessarily, the legality of any action they may take cannot justly be tested by the same rules of law which apply to organizations, the purpose of which are wholly commercial.

The purposes and powers of benevolent societies are alike limited by statute and they are organized upon a wholly different basis from that upon which either a building association or what is commonly called an "old line" Life Insurance Company is organized, and any attempt to extend benefits beyond the limits expressly fixed by their charters is *ultra vires* the society.

The holdings of the Supreme Court of Kansas, in Kirk v. Fraternal, etc., 149 Pac., 400; and that of the Supreme Court of Nebraska, in Haner v. A. O. U. W., 168 N. W., 189, and in Trapp v. Sovereign Camp Woodmen of the World (plaintiff in error here) (168 N. W.,

191), and that of the Missouri Court of Appeals in Garretson v. W. O. W., (243 S. W., 257), were all evidently based upon the proposition first stated.

That the stipulation or promise in a contract, such as is the basis of this action, that the insured will comply with and be bound by all future regulations or by-laws of the association, does not mean that the society may interfere with the essential purpose of the contract, viz: the payment of the indemnity promised, or, in other words, cannot be construed as authorizing the society to repudiate a plain contract is clearly settled there is no doubt. Martin v. Supreme, etc. (73 S. W., 264, Mo.); American, etc., 79 S. W., 629; Supreme, etc., v. Ericson, 146 S. W. 160.

Such holding is equally sound in law and in morals, but it is, however, also settled law that benevolent societies may increase their rates within reasonable limits in order to enable them to meet their obligations and in doing so they violate no contract.

The distinction between reducing by means of a by-law or an amendment the amount stipulated in the most unqualified terms to be paid, and merely increasing by a by-law dues or assessments to such extent as is necessary to meet the exigency ensuing out of the changed financial condition of the association brought about by decrease of membership by death or other causes, is obvious.

The first is a violation and repudiation of an unambiguous contract, while the other is not. This is true because, as authorities already cited show, a policy in a benevolent society is not a "contract" in the ordinary sense of that term, and to increase rates within reasonable limits does not violate the agreement expressed by the policy or certificate.

"It is recognized by the Courts of all jurisdictions that fraternal societies may reasonably increase their rates. Experience has demonstrated that such has been necessary for their continued successful existence."

(Garretson case, 243 S. W., 260, and the numerous authorities therein cited).

The right to increase rates, indeed the necessity, being universally conceded, and the exercise of that right being left to the governing body of the association without further limitation than that the increase shall not be unreasonable or disproportionate to the necessity of the situation, it follows that the manner in which the increased rate may be paid or secured is likewise left to the reasonable discretion of the governing body.

There being no proof in this case that the increase was unreasonable, that was done which it must be held was in contemplation of

the parties it might be necessary to do and the doing of which did not violate any of the rights of the insured, therefore, the beneficiary has no just or legal ground of complaint.

The small amount involved in the instant case would not invest our decision with any special importance, but we felt justified in inferring that there were many certificates or policies issued by the defendant in error which are in the same condition as is the one which was the basis of the original action in this case, and for that reason we have given the question involved more than ordinarily careful investigation and study.

We are of the opinion that the conclusion reached by the Court of Civil Appeals, and phrased in the admirable opinion of Justice Graves, is correct, therefore, the judgment of that Court is affirmed.

MR. JUSTICE WOODWARD, concurring.

The opinion in this case, as prepared and delivered by Special Chief Justice Kittrell, has been by me carefully read and considered, and I concur with him in the disposition made, to-wit: That the conclusion reached by the Court of Civil Appeals of the Galveston District, is correct, and I concur in the affirmance of the judgment of that Court.

The authorities cited by counsel for Defendant in Error, Sovereign Camp Woodmen of the World, and referred to and discussed in the opinion as delivered by Special Chief Justice Kitrell, are in point and are decisive of the questions herein involved and I do not deem it necessary to again make reference thereto, or discuss their holdings as it seems to me they have already been fully and fairly discussed in the opinion by Special Chief Justice Kitrell.

I, therefore, concur in the affirmance of the judgment of the Court of Civil Appeals.

MR. JUSTICE BLACK, concurring in judgment.

I agree to the judgment of affirmance. But, according to my view, the case involves a single question—putting aside for the time being Plaintiff in Error's claim of estoppel—and I, therefore, express no opinion with respect to the other questions discussed in the opinion of the learned Special Chief Justice.

When the deceased became a member of the Defendant in Error, his rate of assessment, as specified in his certificate, was $1.30 per month. After several increases in assessments, the Sovereign Camp of the Defendant in Error in 1919 raised the rate of assessment from $2.85 per month to $19.04 per month. The Defendant in Error is a fraternal benefit society, incorporated under the laws of the State of Nebraska, and the highest Court of that State has held that the raise of rates involved here was authorized by the

constitution and by-laws of the order. (Fowler v. Sovereign Camp, W. O. W., 183 N. W., 550,) The Nebraska Court has further decided that the Defendant in Error was without power under its charter to issue the so-called ''life membership certificates'', such as the one issued to the deceased—that is, certificates providing that, after the lapse of a given number of years, the member should be relieved from the further payment of dues. (Trapp v. Sovereign Camp, W. O. W., 168 N. W., 191.) These decisions of the Nebraska Court have been pleaded here, and the Full Faith and Credit clause of the National Constitution has been invoked.

It becomes our duty, therefore, to give effect to the Nebraska decisions, without a re-examination of the questions decided. (Supreme Council Royal Arcanum v. Green, 237 U. S., 531; Hartford Life Insurance Co. v. Ibs, 237 U. S. 662.) In this case, we are called upon only to ascertain what the Nebraska Court has decided and the effect of its decisions. We are not called upon to determine whether the questions decided were correctly decided. I, therefore, concur in the judgment of affirmance solely upon the ground that the questions mentioned have been decided by the Nebraska Court, and it is our duty to give ''full faith and credit'' to its decisions.

If the questions presented were open for re-examination, it would be difficult, if not impossible, to harmonize the Nebraska decisions with the decisions of the Courts of this State. Our Courts have held that the reserved right to amend the by-laws of such an order will not support such amendments as those involved here. (Ericson v. Supreme Ruling, Fraternal Mystic Circle, 105 Texas, 170; Supreme Council American Legion of Honor v. Batte, 34 Texas Civil Appeals, 456, 79 S. W., 629.)

Plaintiff in Error presents a plea of estoppel. This is founded upon the fact that the deceased continued his payments of the assessments as originally fixed, asserting at the time the invalidity of the raises of the rates and advising the officers of the order that an acceptance of his payments would be treated by him as an acquiescence in the correctness of his position. But it appears that the officers of the order at the same time advised the deceased that, if he paid only the lower rates, a lien would be fixed against his policy for the difference, as authorized by the by-laws. Neither party was misled by the act or statement of the other. The position of each was thoroughly understood by the other. The deceased was insisting upon his right to pay only the lower rates, while the officers of the order were insisting upon their right to charge the rates authorized by the amended by-laws. There is no estoppel. And, for the same reason, it cannot be claimed that the acceptance of

the lower rates constituted a new contract between the parties. There is no more ground for a holding that the order, by accepting the lower rates, agreed to the position of the deceased than there is for a holding that the deceased, by paying the lower rates, agreed to the position of the order. The facts show simply that the deceased claimed the right to pay only the lower rates, while the officers of the order at the same time claimed the right, by virtue of the amendment of the by-laws, to accept the lower rates and charge his certificate with the difference. It is, therefore, not necessary to consider whether the officers of the order possessed authority to disregard the amended by-laws and bind the order to an acceptance from one member of lower rates than those provided in the by-laws.

                                                              Affirmed.