**SOVEREIGN CAMP, W. O. W. v. McCRORY.**

**No. 3894.**

Court of Civil Appeals of Texas. Beaumont.

Oct. 24, 1941.

Rehearing Denied Nov. 26, 1941.

Geo. W. Brown, Jr., and Smith, Smith & Boyd, all of Beaumont, for appellant.

K. C. Barkley and James L. Pardue, both of Houston, for appellee.

MORRIS, Special Chief Justice.

This is a suit originally instituted by Martha Jane McCrory against the Sovereign Camp of the Woodmen of the World, now by charter amendment Woodmen of the World Life Insurance Society, as named beneficiary on a benefit certifi-

cate issued by it to John A. McCrory on September 16, 1897, to recover the face amount of the benefit certificate, being the amount of $2,000, together with the statutory penalty and attorney's fee, a copy of the benefit certificate being attached to the petition. An amended pleading was filed by the heirs of John A. McCrory, deceased, in which recovery was sought for the face value of the certificate, and in the alternative, to recover the premiums paid with accrued interest, and by trial amendment it was pleaded that the certificate was void.

The beneficiary certificate, which is the subject of this litigation, bears a large engraved heading, the first words of which are, "Beneficiary Certificate". To the left of this large caption are the words, "No. 20537, Texas, Age 36". To the right, just under this caption, are the words, "Amount $2,000, Rate $1.00. Payments to cease after 25 years". Just below these words, and in the center of the page, likewise in.very large letters, are the words, "Sovereign Camp, Woodmen of the World".

The certificate then reads: "This certificate issued by the Sovereign Camp, Woodmen of the World, by its authority, Witnesseth: That Sovereign John A. McCrory, a member of the Phoenix Camp 32, located in Orange, State of Texas, is, while in good standing as a member of this fraternity, entitled to participate in its beneficiary fund to the amount of $2,000 payable at his death to his wife, Martha Jane McCrory, by the Sovereign Camp, and there shall also be paid the sum of $100.00 for the placing of a monument at his grave. This certificate is issued and accepted subject to the conditions on the back hereof, and those named in the constitution and laws of this fraternity, and shall be forfeited if said sovereign does not comply with said conditions, constitution and laws and such by-laws as are now in force or may hereafter be enacted by the Sovereign Camp or the camp of which he is a member at the date of his decease."

Among other things, there is printed on the back of the certificate the following:

"Conditions referred to and made a part of this certificate:

"(1) This certificate is issued in consideration of the representations and agreements made by the person named herein in his application to become a member, and in consideration of the payment made when introduced in prescribed form, also

his agreements to pay all assessments and dues that may be levied during the time he shall remain a member of the Woodmen of the World.

"(2) In case of his death while a member in good standing of the Order, his beneficiary or beneficiaries shall receive the full amount named in his certificate, unless the proceeds of one assessment upon all members in good standing during the month following the approval of the claim shall be less than said amount, in which case his beneficiary or beneficiaries shall only receive the proceeds of one assessment in full settlement of all demands.

"(3) If the admission fees, dues or beneficiary fund assessments levied against the person named in this certificate shall not be paid to the clerk of his camp as required by the constitution and laws of the Order, this certificate shall be null and void and continue so until payment is made in accordance therewith".

In the application made by John A. McCrory for membership and participation in the beneficiary fund, referred to in the benefit certificate, there appears this provision: "It is agreed that all the provisions of the constitution and laws of the Order now existing or hereafter adopted shall form a part of the certificate.issued hereunder, whether printed on or referred to in such certificate or not".

The Woodmen of the World pleaded among other things that the Society's by-laws purporting to authorize the insertion of the "payments to cease" clause in the certificate was ultra vires the Society and void, and was in fact repealed by the Sovereign Camp of the Society, its supreme legislative or governing body, in 1899, and that the insured, if he wished to have his certificate remain in force, was required to pay all dues and assessments levied against him by the Society throughout his life, and further invoking Article 4, Section 1, of the United States Constitution, pleaded the judgment of the Supreme Court of Nebraska, the State of the Society's domicile, rendered in the case of Trapp v. Sovereign Camp, W. O. W., 102 Neb. 562, 168 N.W. 191, wherein it was held that the Society's by-laws purporting to authorize the insertion of the "payments to cease" clause in the benefit certificates issued by it was adopted without charter power or authority, and therefore was ultra vires the Society and void. It was further pleaded that the presence of

the "payments to cease" clause in a certificate issued by the Society in nowise affected the holder's obligation to pay all dues, premiums, and assessments levied against him so long as he remained a member of the Society. The Woodmen of the World also pleaded the applicable provisions of its constitution and by-laws, which now provide for the payment of assessments by each member during his lifetime.

The trial was had to the court without a jury, resulting in judgment for the heirs of John A. McCrory for the amount of premiums paid on the certificate, together with interest, from which judgment this appeal is prosecuted.

It will thus be seen that this whole controversy centers around the clause at the head of the certificate, "Payments to cease after 25 years". John A. McCrory paid his assessments and dues required of him by the Society for the full period of 25 years. The last receipt book evidencing the payment of his premiums contained a notation, "Paid in full to the date of policy". It is not made to appear by whom or by what authority such notation was made in Mr. McCrory's receipt book. The last payment of assessments was made by John A. McCrory in September, 1922, which payment completed the 25-year period during which his certificate was in effect. No assessments or premiums were paid on the certificate after September, 1922. John A. McCrory died June 12, 1939.

■ The constitution and by-laws of the Society in effect in 1897 purported to authorize the issuance of life membership certificates to certain members, which would be fully paid up in 25 years. This provision was repealed, however, by the legislative body of the Society in 1899, and since then the Society's constitution and laws have provided that all members must pay dues and assessments during their lifetime to remain in good standing and to keep their benefit certificates valid. Further, it was held by the Supreme Court of Nebraska, the State of the Society's domicile, in the case of Trapp v. Sovereign Camp, W. O. W., 102 Neb. 562, 168 N.W. 191, that the Society was without charter power to issue life membership certificates, and that the "payments to cease" clause was ultra vires the Society and void. This holding is binding on us. Wirtz v. Sovereign Camp, W. O. W., 114 Tex. 471, 268 S.W. 438.

■ However, the fact that the "payments to cease" clause was void did not, in our opinion, under the facts of this case, avoid the certificate. After the repeal of the provision of the constitution and laws authorizing this character of certificate, an amendment to the constitution and laws was adopted providing that all members should pay monthly assessments and dues so long as they were members in good standing, to keep their benefit certificates in force. Under such amendment, so long as McCrory paid his dues and assessments, he had the protection afforded by his certificate; when he ceased to pay, his certificate lapsed.

The constitution, laws and by-laws of the Sovereign Camp of the Woodmen of the World, as amended and adopted at the fourteenth biannual session at New York, N. Y., in July, 1921, in effect September 1, 1921, in effect when McCrory ceased paying assessments, provided, in Section 63, as follows:

"(a) Each member of this Society shall pay to the clerk of his camp one annual assessment or one monthly installment of assessment as required by these laws or by the provisions of his certificate, which shall be credited to and known as the sovereign camp fund, and he shall also pay such camp dues as may be required by the By-laws of his camp. He shall pay any additional sovereign camp fund or camp dues or either, which may be legally called.

"(b) If he fails to make any such payments on or before the last day of the month, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

The record clearly shows that the Sovereign Camp Woodmen of the World is a non-profit, fraternal benefit society consisting of its members who belong to local organizations known as camps; that it is governed by representatives who assemble biannually on the odd years, the representatives to the sovereign camp being elected from the local societies or camps. At each biannual meeting of these representatives to the sovereign camp, matters pertaining to the general welfare of the Society, including amendments to the constitutions, laws, and by-laws are considered and acted upon. The rate of assessments and premiums are subject to reasonable change, as well as the form and substance of the certificates issued by the Society, such changes being considered

and made by the supreme legislative body of the Society, consisting of delegates from the local societies at such biannual meetings. Each member is or has a right to be represented at such supreme legislative meetings.

■ The assessments or premiums paid by the members constitute the fund out of which payments are made on the beneficiary certificates. The officers of the Society are only collecting agents for the members of the Society in receiving and disbursing such funds. As appears from the certificate under consideration, in case of his death while a member in good standing of the Society, his beneficiary shall receive the full amount named in the certificate, unless the proceeds of one assessment upon all members in good standing during the month following the approval of the claim shall be less than said amount, in which case his beneficiary shall receive only the proceeds of one assessment. A member of the Society, therefore, stands in a dual relationship to each other member of the Society; he is both the insurer and the insured. By making payment of his assessments he affords a measure of insurance for each of his brothers in the Society, and in return all of the other members afford him a like protection by the payment of their premiums. Through this mutual arrangement all members of the Society are insured, and through their legislative representatives the members control the policies as well as all of the business and affairs of the Society. Being a member of the organization, and being represented in all of its deliberations, each member is bound by all the provisions of the constitution of the Society, by-laws, rules and regulations thereof, and all amendments thereto enacted by such representatives.

■ There is another and probably more cogent reason for holding that McCrory was bound by the amendments to the Society's constitution and by-laws. He made a written application for membership in the Society, which he signed, and which, according to its terms, became a part of the contract of insurance. By that application and the certificate issued pursuant thereto, he entered into a contract binding himself to abide by the constitution, laws and by-laws of the Society then in effect or which may thereafter be adopted. It follows, therefore, that when the provi-

sion of the Society's constitution and by-laws providing for the issuance of certificates bearing the "payments to cease" clause was amended and repealed, and a provision was enacted binding each member to pay premiums or assessments during his lifetime, such amendment to the constitution and by-laws was binding on McCrory, and when he ceased paying his premiums or assessments his certificate became void. Stark et ux. v. Sovereign Camp, W. O. W., 189 Ky. 719, 225 S.W. 1063.

■ The further point is made that the receipt book held by John A. McCrory contained a notation after the month of September, 1922, being the last monthly assessment paid by him, "Paid in full to the date of policy". It is not clear just what this notation means, but if we give it the effect contended for by appellees, that it meant the policy was paid in full for 25 years, that notation does not add anything to the obligation of the Society. It is admitted that the payments were made for a full period of 25 years. Under the constitution, laws and by-laws of the Society, no one had authority to bind the Society by any receipt in full, and unless the payments of premiums or assessments were made monthly while a member was in good standing, his membership was forfeited and his benefit certificate lapsed. The record does not disclose who made this notation or by what authority it was made, and under such circumstances, such notation could not have the effect of enlarging the liability of the Society.

It follows from what has been said that the case should be, and the same is, reversed and rendered.

J. W. WILLIAMS, Special Judge (concurring).

Unless the words "Paid in full to the date of policy," appearing on the receipt book, introduced in evidence, showing monthly payments made by McCrory, both in law and in fact, rule this case, then the appellee (plaintiff below) can not recover on their action.

The record in no way discloses who placed the above-quoted words on the receipt book nor when they were placed there, unless we assume they were placed there after the certificate had been in force twenty-five years. The words are not signed or

574

initialed by anyone; neither do they bear date. They could have been placed there by the Camp Clerk of his own volition; they could have been placed there by the Camp Clerk at the request of the certificate holder, or they could have been placed there by some other person for the purpose of ready personal information.

By deposition it is shown that the first notice received by appellant of the existence of these words was when the beneficiary made proof of the death of McCrory which time was about seventeen years after the expiration of the twenty-five year period succeeding the date of the issuance of the certificate.

Now if the quoted words are to be binding on the Society which issued the certificate, it must first be shown who placed the words on the certificate, and further that such person was the agent of the Society, and that the Society had power to authorize such notation. All these elements are absent. The law of agency pertaining to transactions of this nature is elementary and requires no citation of authority.

Further, if the Society had authority to issue the certificate with the endorsement, "Payments to cease after 25 years", and had no authority to revoke this provision, then the endorsement of the words "Paid in full to date of policy," on the receipt book held by McCrory, was an idle act; it could neither add to or detract from the certificate. The certificate would then speak for itself, it being shown and admitted by all parties that assessments had been timely paid upon it for a full period of twenty-five years.

I have given close study to the opinion of the Special Chief Justice rendered in this case. In my opinion same fully covers the law of the case. We must at least give great weight to the case of Wirtz v. Sovereign Camp, W.O.W., 114 Tex. 471, 268 S.W. 438, 440, if indeed we should not be bound thereby. This was a Texas Supreme Court case decided by three very able special judges. Judge Kittrell, the Special Chief Justice, wrote an able and exhaustive opinion. In the course of his opinion he lays down this proposition of law: "It may be stated, in view of the authorities, that the provision of the contract that the insured should be released from any obligation to pay any assessment after the lapse of 20 years, was ultra vires the association."

In support of this proposition he cites cases decided by the Supreme Court of Nebraska, the domiciliary home of the Society in that case, and in this case.

Judge Kittrell cites the case of Westerman v. Supreme Lodge K. P., 196 Mo. 670, 94 S.W. 470, 5 L.R.A.,N.S., 1114, wherein it is said that the law applying to paid-up policies is not applicable to fraternal and benevolent associations. As a further reason for applying a rule differing from the law as applied to "old line" insurance companies and as conferring the power upon Fraternal Societies to disregard or revoke "cease to pay" provisions in certificates of insurance issued by fraternal societies, he uses this apt language: "No benevolent association is an insurance company in the ordinary acceptation of that term. The relation of certificate holders—as distinguished from 'policy holders'— is essentially mutual and reciprocal. Each certificate holder is an insurer of the other and of all others who are members, and if it were permitted to exempt a certain part of the membership from the payment of dues, after they have been members a certain length of time, or after they have reached a certain age, that relationship of mutuality and reciprocity, which is the essence of the association, would be destroyed, and the burden of paying assessments sufficient to meet losses would be shifted from the whole to a part of the membership, with the inevitable result that the whole theory of organization of such associations would be violated, and the whole fabric—none too strong at best—which is built upon it, would fall into insolvency and ruin."

In considering the case at bar, I find the case of Stark et ux v. Sovereign Camp, W.O.W., 189 Ky. 719, 225 S.W. 1063, 1065, by the Court of Appeals of Kentucky to be very much in point.

That case was a suit in equity. It appears that Stark held a certificate issued by the Sovereign Camp Woodmen of the World for the face amount of $1,000. As in the case at bar, the certificate contained "a cease payment clause"; the exact endorsement being "amount $1,000.00, rate 1.30, payment to cease after 20 years." The certificate bore this further provision: "This certificate, issued by the Sovereign Camp of the Woodmen of the World by its authority witnesseth that Sovereign Thomas A. Stark * * * is, while in good standing, * * * entitled to participate in its beneficiary fund to the amount of one

thousand dollars, payable at his death to his wife, M. L. Stark, by this Sovereign Camp * * * This certificate is issued and accepted subject to all the conditions on the back hereof, and all the conditions named in the Constitution and laws of this fraternity, and liable to forfeiture if said sovereign shall not comply with said conditions, constitution, and laws, and such by-laws and rules as are or may be accepted by the Sovereign Camp, * * * of which he is a member at the date of his decease."

When the certificate had been in force for twenty years and all assessments had been paid, Stark and his wife commenced a suit in equity for the purpose of obtaining a mandatory injunction against Sovereign Camp, Woodmen of the World, to compel it to issue and deliver to Stark a paid-up beneficiary certificate for $1,000, and to enjoin the organization from collecting or attempting to collect other dues from him, and also to recover of the association certain dues paid by him after the expiration of the twenty-year period, averring that he had in 1897 obtained a certificate or policy from said association containing a clause relieving him from payment of dues after the expiration of twenty years from its date, and that said period had expired in 1917, before the commencing of the action, but that said association was threatening to cancel and annul his certificate unless he continued to pay all dues and assessments made by the camp on him as a member.

The court denied the relief as prayed for by the petitioners. In the course of its opinion the court uses this language: "Perhaps the most potent reason why the appellants are not entitled to the relief prayed is the fact that Stark, by his application for and acceptance of the certificate, bound and obligated himself to abide by all laws of the order then in force or which might thereafter be adopted by the society while he was a member. He thus yielded his right, if any he had, to complain of the change in by-laws and terms of the certificate with reference to term insurance, or containing a clause 'Payments to cease after 20 years.' Even had Stark, under his original certificate and contract, been entitled to the benefits of the 20-year term, he agreed that the association might change that or any other term of the certificate, or the laws of the order affecting the same, and that he would abide the results."

These principals of law are sustained in the case of Wright v. Minnesota Mutual Life Insurance Company, 193 U.S. 657, 24 S.Ct. 549, 48 L.Ed. 832.

It is also contended that the certificate was void ab initio, and therefore that all dues paid by McCrory should be recovered from the Society. The authorities do not sustain this proposition. Suppose for illustration that McCrory had paid his dues, as assessed against the certificate, for four or five years which would amount to about $100. He then dies. His widow being his beneficiary brings suit for $2,000, the face of the certificate. Could the Society then take the position that the certificate was void ab initio and tender to the beneficiary the paltry sum of $100 in full settlement of certificate. This would indeed be atrocious doctrine and I cannot conceive of any court adopting such a doctrine as the rule of law to be applied in such contingency.

If the certificate was void forty-two years after its issuance then it was likewise void five years after its issuance.

McCrory did have full coverage for twenty-five years and he could have continued the coverage by payment of the dues assessed against the certificate throughout his lifetime; in other words, he held a certificate or policy which old line insurance companies denominate as "ordinary life".

I am in complete accord with the opinion as written by the Special Chief Justice in the case, and concur in his opinion to the effect that the case should be reversed and rendered.